REVERSE and REMAND; and Opinion Filed August 20, 2013.



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

No. 05-12-00065-CR

THE STATE OF TEXAS, Appellant

V.

ARACELI SANCHEZ-PINON, Appellee

On Appeal from the 203rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. F10-21619-P

## MEMORANDUM OPINION

Before Justices Lang-Miers and Fillmore[1]
Opinion by Justice Lang-Miers

Appellee Araceli Sanchez-Pinon was charged by indictment with the offense of possession of a controlled substance with intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West 2010). She filed a motion to suppress, arguing that the affidavit supporting the search warrant did not show probable cause sufficient to justify the issuance of the warrant. The trial court granted the motion, and the State appealed. We reverse and remand for further proceedings.

### BACKGROUND

Sanchez-Pinon was arrested during the execution of a search warrant at a residence located at 706 Fairwood Place in Duncanville, Texas. Police officers came to suspect there may

---

[1] Justice Mary Murphy was on the panel and participated at the submission of this case, but due to her resignation from this Court, she did not participate in the issuance of this Opinion. *See* TEX. R. APP. P. 41.1(a), (b).

be drugs at the Fairwood Place residence as a result of their previous surveillance and search of another residence located at 514 Falling Leaves Drive.

*Surveillance at Falling Leaves Residence*

Detective Jeff Pollock with the Duncanville Police Department Criminal Investigations Division testified at the hearing on Sanchez-Pinon's motion to suppress that he first noticed the Falling Leaves residence when he and another police officer, Detective Moon, were "driving in some neighborhoods" and Moon observed a Hispanic male carrying two large flat screen televisions from the trunk of a vehicle into the residence. Moon and Pollock set up surveillance on the house and watched it for "an hour and a half or so." During this time they observed a lot of heavy traffic at the residence.

Pollock described the traffic: a car would pull up and the occupants would get out and stay inside the house for approximately three or four minutes. Sometimes they would stand in the driveway, speak with what appeared to be the residents, and leave three or four minutes later. Eight to ten vehicles came and went during their surveillance. The vehicles included "high profile type vehicles" such as Escalades, a Lincoln truck, and a "lot of vehicles with the extra equipment on them, the expensive rims, the tires and wheels," which were commonly driven by drug users or narcotics dealers. Pollock notified his narcotics officers about the residence and told them "they may want to add it to their list of houses" that they were currently watching. Pollock believed narcotics were being sold at the location and he reported everything to Detective Dan Hunt, an eighteen-year veteran police officer for the City of Duncanville who had conducted or been involved in most of the narcotics investigations in Duncanville for the past fourteen to fifteen years.

The next day was a regular trash day, so Hunt went by and collected trash bags placed at the curb in front of the Falling Leaves residence. He opened the trash bags and found a shoe box

–2–

with a white powder residue inside. The powder field-tested positive for cocaine. He also saw imprints on the bottom, sides, and top of the shoe box that were rectangular in shape and indicated that the box previously contained blocks or packages that could have been the source of powder cocaine. Based on his training and experience, he concluded the imprints were consistent with the size and shape of "kilo packages." The inside of the shoe box also contained axle grease that was semitransparent and brown, which he said indicated it had not been used to pack bearings or in an axle. Hunt testified that "quite frequently" drug traffickers smear axle grease to prevent the odor of controlled substances from reaching the K-9 dogs. The use of axle grease also indicated to Hunt that the package contained a large quantity of controlled substance; he had "never seen anybody smear ax[le] grease all over a one gram package, because you don't want to deal with the ax[le] grease, for something that's going to be consumed sometime soon." Hunt believed that the box contained two kilograms of cocaine, which is "consistent with large scale trafficking."

### Connection to Fairwood Place Residence

Hunt also found a piece of mail for "Rafael Sanchez" with the address of "706 Fairwood Place, Duncanville, Texas" inside the trash bag. He conducted a search of Dallas County records and found that a "Rafael Sanchez" living at 706 Fairwood Place had been arrested previously for possession of a controlled substance. He also discovered that a "Leodegario Sanchez" had been arrested previously at the Fairwood Place residence for narcotics-related warrants and had multiple arrests for drug-related offenses.

In addition to the mail in the trash bag, Hunt discovered another connection between the Falling Leaves and Fairwood Place residences: when he picked up the trash from the front of the Falling Leaves residence, he noticed that the car previously used to transport the television sets was parked in the driveway. He ran the license plate, which was registered to a "Reyna Pinon"

residing at 706 Fairwood Place. Hunt began surveillance of 706 Fairwood Place based on the information found during the surveillance of the Falling Leaves residence.

*Search Warrant for Falling Leaves Residence*

Hunt secured a search warrant for the Falling Leaves residence, which was executed on October 29. During the search, police officers found over twenty grams of methamphetamine, over one hundred grams of cocaine, approximately $10,000 in cash, three handguns, an assault rifle, and a stolen rifle. Officers also found several documents addressed to various individuals at 706 Fairwood Place, including a police citation issued to "Nicanor Depaz Cardenas"; another police citation issued to "Rodrigo Caligua"; a police citation "payment document" for "Roberto Moto"; two car insurance documents for "Reyna Pinon" and "Roberto Moto"; a second insurance document for "Roberto Moto"; a Kohl's "store payment document" bearing the name of "Reyna Pinon"; an unidentified bill to "Araceli Sanchez"; four unidentified mailings addressed to "Rafael Sanchez"; a currency transfer record for "Rodrigo Moto"; and an unidentified document bearing the name of "Araceli Sanchez." All of these documents showed the address of 706 Fairwood Place. Hunt testified that there were as many documents found during the search addressed to individuals at 706 Fairwood Place as there were for the Falling Leaves residence.

While the search of the Falling Leaves residence was being conducted, Roberto Moto-Caligua arrived there, parked in the driveway, and was detained by officers. But the address on his matricula identification card was listed as 706 Fairwood Place, and he was driving the car previously discovered to be registered to "Reyna Pinon" at 706 Fairwood Place.

*Surveillance of Fairwood Place Residence*

Hunt continued his surveillance of 706 Fairwood Place after the search of the Falling Leaves residence. He seized two trash bags from in front of the Fairwood Place residence on

November 2, a regularly scheduled garbage-collection day. He discovered a quart-sized plastic zip bag with "a crystal residue" that tested positive for methamphetamine in one of the bags. The "crystal meth" appeared to be consistent with the methamphetamine seized from the residence on Falling Leaves. It was ground "pretty fine" with a lot of large sections that "had a little bit of dusting on it." He also found a box for a digital scale. The scale's capacity ranged from one gram to ten pounds. Hunt testified that "[t]he scale is consistent with those used by narcotics traffickers to weigh large amounts of controlled substances," but the scale's capacity was larger than those typically found in possession of individuals that traffic in small quantities of controlled substances. Inside the box for the digital scale was a small portion of a plant stem "consistent with a marijuana stem."

Two cars were parked in the driveway when Hunt picked up the trash at 706 Fairwood Place. He ran the license plates for both cars; one was registered to both "Araceli Sanchez" and "Reyna Pinon" at 706 Fairwood Place. A search of previously issued citations revealed that a citation was issued to "Nicanor Depaz Cardenas" while driving this vehicle. A criminal record search revealed that Cardenas had several previous offenses, including one for manufacture or delivery of a controlled substance.

*Search Warrant for Fairwood Place Residence*

Hunt drafted an affidavit detailing the evidence discovered during the surveillance and search of the Falling Leaves residence, the search of the trash bags from the Fairwood Place residence, and the results of the multiple computer record and database searches. Based on that affidavit, a search warrant for 706 Fairwood Place was issued. During that search, officers found a large amount of methamphetamine in the residence—approximately 78 grams in all—and almost $25,000 dollars in cash. These drugs are the basis for the possession charge against Sanchez-Pinon, who was at the residence when the search warrant was executed.

*Motion to Suppress Evidence from Fairwood Place Residence*

Sanchez-Pinon filed a motion to suppress, arguing the warrant to search the Fairwood Place residence was illegally issued because the information contained in the search warrant affidavit was insufficient as a matter of law to support probable cause. In her motion, she did not address or mention any of the evidence or information found through the surveillance and search of the first residence, 514 Falling Leaves Drive. She also argued that the U.S. Supreme Court "put the bar" at two or more positive trash searches to show probable cause.

At the hearing on the motion to suppress, Sanchez-Pinon argued that because a trial court previously deemed the search of the Falling Leaves residence illegal and granted a motion to suppress the evidence seized in executing the search warrant at that residence, the search of 706 Fairwood Place was "the fruit of the poisonous tree" and should be suppressed as well. Sanchez-Pinon also argued that the only evidence available to support a search warrant at the Fairwood Place address was the letters the officers found at 514 Falling Leaves Drive that were addressed to 706 Fairwood Place and the contents of a single trash bag that was searched at the Fairwood Place residence. She contended that "paramount and controlling in this particular issue is the Supreme Court case that says one trash run is not enough . . . ."

The trial court granted Sanchez-Pinon's motion to suppress, and this appeal followed.

## DISCUSSION

In a single issue, the State argues that the trial court committed reversible error by granting Sanchez-Pinon's motion to suppress because the affidavit contained sufficient facts to establish probable cause to issue a search warrant for the Fairwood Place residence.[2]

---

[2] Sanchez-Pinon did not file a brief in this appeal or participate in oral argument.

## Standard of Review

The core of the Fourth Amendment's warrant clause and its Texas equivalent is that a magistrate may not issue a search warrant without first finding "probable cause" that a particular item will be found in a particular location. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012); *State v. Coker*, No. 05-12-00616-CR, 2013 WL 3728819, at *2 (Tex. App.—Dallas July 17, 2013, no. pet. h.). The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant. *Duarte*, 389 S.W.3d at 354; *Coker*, 2013 WL 3728819, at *2. Probable cause exists when, under the totality of the circumstances, there is a "fair probability" that contraband or evidence of a crime will be found at the specified location. *Duarte*, 389 S.W.3d at 354; *Coker*, 2013 WL 3728819, at *2. A magistrate may draw reasonable inferences from the affidavit and must interpret the affidavit in a common sense and realistic manner. *Ramos v. State*, 934 S.W.2d 358, 362–63 (Tex. Crim. App. 1996). We give "great deference" to a magistrate's determination of probable cause. *See Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004); *Lane v. State*, 971 S.W.2d 748, 752 (Tex. App.—Dallas, 1998, pet. ref'd).

The duty of the reviewing court is to determine whether, considering the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed to support the issuance of the warrant when viewing the affidavit. *Illinois v. Gates*, 462 U.S. 213, 236–37 (1983). "We must defer to the magistrate's finding of probable cause if the affidavit demonstrates a substantial basis for his conclusion." *Id.* Statements made during a motion to suppress hearing do not factor into the probable cause determination. *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996).

The trial court, in determining whether an affidavit is sufficient to support a search warrant, examines the totality of the circumstances and gives great deference to the magistrate's

decision to issue the warrant. *Ramos*, 934 S.W.2d at 363. We review de novo the issue before the trial court, i.e., whether the magistrate, viewing the totality of the circumstances, had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Lane*, 971 S.W.2d at 752.

## Analysis

The State argued that, because the evidence gathered from the surveillance and search of the Falling Leaves residence was included in the affidavit supporting the search of the Fairwood Place residence, that evidence was part of the facts upon which the magistrate could rely in deciding to issue a search warrant for 706 Fairwood Place. *See Bernard v. State*, 807 S.W.2d 359, 365 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (evidence of illegal distribution of drugs discovered during search of partner's residence along with evidence defendant was involved in the illegal distribution of drugs adequate probable cause to support a search of defendant's residence).

Sanchez-Pinon did not discuss the evidence discovered at the Falling Leaves residence in her motion to suppress but did maintain at the suppression hearing that a trial court had previously concluded that the search of the Falling Leaves residence was illegal and had granted a motion to suppress the evidence obtained during its search.[3] While Sanchez-Pinon made clear that she was not challenging that search, she did argue that the search of the second residence was "the fruit of the poisonous tree" of the search of the first residence. *See Reed v. State*, 809 S.W.2d 940, 944 (Tex. App.—Dallas 1991, no pet.) ("The fruit of the poisonous tree doctrine forbids the use of evidence obtained as a result of an illegal arrest . . . ." and "serves to exclude not only the direct products, but also the indirect products of Fourth Amendment violations.").

---

[3] Neither the State nor Sanchez-Pinon provided a citation to or copy of a court order concluding the search of 514 Falling Leaves Drive was illegal; the trial court's basis for that determination is unclear. Hunt did acknowledge on cross-examination that he was aware that the motion to suppress evidence obtained during the search of 514 Falling Leaves Drive was granted and "the search was deemed illegal."

The Supreme Court, however, has never held that "unlawfully seized evidence is inadmissible in all proceedings or against all persons." *Rakas v. Illinois*, 439 U.S. 128, 134 n.3 (1978). The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. *Alderman v. United States*, 394 U.S. 165, 171–72 (1969). "Coconspirators and codefendants have been accorded no special standing." *Id.* at 172. Any defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded. *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004). A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *Rakas*, 439 U.S. at 133–34 (1978); *Hughes v. State*, 24 S.W.3d 833, 838 (Tex. Crim. App. 2000). As the Supreme Court explained in recounting its decision in *Wong Sun v. United States*, 371 U.S. 471 (1963):

> [in *Wong Sun*], two defendants were tried together; narcotics seized from a third party were held inadmissible against one defendant because they were the product of statements made by him at the time of his unlawful arrest. But the same narcotics were found to be admissible against the codefendant because '(t)he seizure of this heroin invaded no right of privacy of person or premises which would entitle (him) to object to its use at his trial.'

*Alderman*, 394 U.S. at 172–73. More recently, in *Roeder v. State*, 768 S.W.2d 745 (Tex. App.— Houston [1st Dist.] 1988, pet. ref'd), the appellant argued that evidence seized in the search of his apartment and his confessions should not have been admitted because they were "'tainted fruit' of [a third party's] confession which the Texas Court of Criminal Appeals ruled was illegally obtained." *Id.* at 755. The Houston court of appeals, relying on *Alderman*, determined that appellant had no standing to complain and overruled appellant's issue. *Id.* Similarly, Sanchez-Pinon has failed to show that she personally had a reasonable expectation of privacy in

–9–

the Falling Leaves residence. *See Kothe*, 152 S.W.3d at 59. She has no standing to complain about the evidence seized during the search of the Falling Leaves residence, and the magistrate that issued the warrant along with any reviewing court could rely on that evidence in determining whether probable cause existed to issue the warrant for the Fairwood Place residence.

Additionally, Sanchez-Pinon argued in her motion to suppress that the U.S. Supreme Court "put the bar" at two or more positive trash runs to establish probable cause, citing *California v. Greenwood*, 486 U.S. 35 (1988). She also cited to *State v. Dickson*, No. 05-07-01542-CR, 2008 WL 3867643 (Tex. App.—Dallas Aug. 21, 2008, no pet.) (not designated for publication), *State v. Davila*, 169 S.W.3d 735 (Tex. App.—Austin 2005, no pet.), and *Serrano v. State*, 123 S.W.3d 53 (Tex. App.—Austin 2003, pet. ref'd) as Texas cases that, following *Greenwood*, found the one-time discovery of a controlled substance in a trash search insufficient to establish probable cause. But this Court has recently determined that a single trash search, in light of the totality of the circumstances in that case, was sufficient to establish probable cause to search a residence. *See Coker*, 2013 WL 3728819, at \*6. And *Dickson*, *Davila*, and *Serrano* made their determinations based on the totality of the circumstances, not simply on the fact that a single trash search was conducted. *See Davila*, 169 S.W.3d at 740 ("[T]he totality of the facts stated in the affidavit did not give the magistrate a substantial basis for concluding that a search of the house would uncover evidence of wrongdoing."); *Dickson*, 2008 WL 3867643, at \*2 ("After considering the totality of the circumstances, we agree with the trial court that the affidavit was not sufficient to justify the magistrate's conclusion that marijuana would probably be on the premises at the time of the search."); *Serrano*, 123 S.W.3d at 63 (in totality of the circumstances analysis, court unable to ensure the magistrate had a substantial basis for concluding that probable cause existed).

–10–

Consequently, in determining whether probable cause exists, the test is the same regardless of whether a single trash bag search or multiple trash bag searches were conducted: this Court must determine whether, considering the totality of the circumstances, the magistrate had a substantial basis for concluding that probable cause existed to support the issuance of the warrant when viewing the affidavit. *See Gates*, 462 U.S. at 236–37.

In the present case, the evidence on which the magistrate could rely in issuing the warrant for the Fairwood Place residence included the following: (1) the suspicious foot and vehicle traffic at 514 Falling Leaves Drive; (2) the vehicle parked in the driveway of 514 Falling Leaves Drive registered to an individual residing at 706 Fairwood Place; (3) the cocaine and methamphetamine found in the trash at the Falling Leaves residence; (4) the documents found along with the methamphetamine and cocaine in the trash at the Falling Leaves residence addressed to the Fairwood Place residence; (5) the past criminal records involving prior drug possession offenses of the people listed as residents of the Fairwood Place residence; (6) the many documents found during the search of 514 Falling Leaves Drive addressed to 706 Fairwood Place; (7) the drugs, guns, and money found during the search of the Falling Leaves residence; (8) and the evidence discovered during the trash search of the Fairwood Place residence, including methamphetamine residue, a plant stem "consistent with" marijuana, and a box for a digital scale consistent with scales used by narcotic traffickers.

We conclude that this evidence, taken together, was sufficient to establish probable cause for the search of the Fairwood Place residence.

We reverse the trial court's grant of the motion to suppress and remand the case for further proceedings.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120065F.U05

-12-



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-12-00065-CR    V.

ARACELI SANCHEZ-PINON, Appellee

On Appeal from the 203rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F10-21619-P.
Opinion delivered by Justice Lang-Miers.
Justice Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered this 20th day of August, 2013.

/Elizabeth Lang-Miers/

ELIZABETH LANG-MIERS
JUSTICE