**REVERSE and REMAND; and Opinion Filed July 17, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00616-CR**

**No. 05-12-00617-CR**

**THE STATE OF TEXAS, Appellant**
**V.**
**JEFFREY BRIAN COKER, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F10-23998-U; F09-24977-U**

## OPINION

Before Justices Bridges, FitzGerald, and Myers
Opinion by Justice Bridges

The State of Texas appeals the trial court's orders granting Jeffrey Brian Coker's motions to suppress. In a single issue, the State argues the trial court erred in granting Coker's motions to suppress. We reverse the trial court's orders granting Coker's motions to suppress and remand for further proceedings.

Garland police detective M.R. Roberds' search warrant affidavit in the underlying cases indicated that, on September 16, 2009, he received information from an unidentified concerned citizen that "Jeff Coker," who resided with his eight-year-old daughter at an address in Garland, "was involved in the clandestine manufacturing of Methamphetamine at the dwelling." The citizen stated that "they had never actually observed the clandestine Methamphetamine laboratory in the residence" but had heard of it from individuals who had observed the laboratory

in Coker's residence and who were associated with Coker. On September 23, 2009, Roberds conducted surveillance of Coker's residence and noticed several full trash bags next to "the large City of Garland trash receptacle adjacent to the residence." Roberds also observed a 1999 Jeep registered to Coker. At approximately 8:46 a.m. on September 24, 2009, Roberds again conducted surveillance at Coker's residence and "immediately noticed that the trash receptacle for the residence had been placed out adjacent to the street area for collection and disposal." At approximately 10:19 a.m. on September 24, Garland police narcotics investigator M. Mendoza observed a man thought to be Coker depart in the Jeep. Mendoza collected the trash receptacle from in front of Coker's residence and transported it to the police department for examination.

The trash contained three empty one-gallon cans of Toluox, one empty one-gallon can of camp fuel, a miscellaneous number of empty bottles, one pint bottle of peroxide, one one-gallon plastic jug of iodine, one full bottle of Methylsulfonylmethane (MSM), one empty one-quart bottle of drain cleaner, a miscellaneous number of iodine stained funnels, numerous iodine and/or red phosphorous stained paper coffee filters, a miscellaneous number of pieces of rubber tubing stained from iodine exposure, one HCL-generator, two small plastic packets each containing an off-white powder substance, one glass coffee pot stained from processing red phosphorous, numerous small size bottles of tincture of iodine, assorted rubber gloves showing exposure to iodine and red phosphorous, and a piece of mail addressed to Jeff Coker at the target residence. Subsequent testing of the off-white powder confirmed the presence of methamphetamine. Based on Roberds' affidavit, the trial court issued a search warrant for Coker's residence.

Following the search of his residence, Coker was indicted for the offense of possession of methamphetamine in a drug free zone in cause number 05-12-00616-CR and endangering a child

by manufacturing illegal drugs where the child resided and by exhibiting and using illegal drugs and drug paraphernalia in the presence of the child in cause number 05-12-00617-CR.

Coker filed motions to suppress on the grounds the search of his residence was conducted pursuant to a search warrant issued upon an affidavit that did not contain written sworn averments of fact sufficient to constitute probable cause. At the hearing on Coker's motions to suppress, Coker argued the search warrant affidavit was based on an anonymous citizen tip and a single examination of appellant's trash. Coker argued "there's not a single Texas case where an anonymous tip plus a single search of the trash has ever established probable cause." The trial court granted Coker's motions to suppress, and this appeal followed.

In a single issue, the State argues the search warrant affidavit contained sufficient facts from which the magistrate was entitled to find probable cause. Thus, the State argues, the trial court erred in granting Coker's motions to suppress. In his first responsive issue, Coker argues the State has not preserved this issue for our review because the State did not make this argument in the trial court. Coker argues the State's "only argument was that, because drugs were found in the one trash search, this was sufficient to establish probable cause." On the contrary, the State argued at the hearing on Coker's motion to suppress "that the magistrate who was viewing that affidavit could have known that there was probable cause to issue this warrant and such." We conclude this was sufficient to preserve the State's issue for our review.

The core of the Fourth Amendment's warrant clause and its Texas equivalent is that a magistrate may not issue a search warrant without first finding "probable cause" that a particular item will be found in a particular location. *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant. *Id.* Probable cause exists when, under the totality of the circumstances, there is a "fair

–3–

probability" that contraband or evidence of a crime will be found at the specified location. *Id.* This is a flexible, nondemanding standard. *Id.* Neither federal nor Texas law defines precisely what degree of probability suffices to establish probable cause, but a magistrate's action cannot be a mere ratification of the bare conclusions of others. *Id.* A magistrate should not be a rubber stamp. *Id.* "In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).

After reviewing the supporting affidavit realistically, and with common sense, a reviewing court must uphold the magistrate's decision so long as the magistrate had a substantial basis for concluding that probable cause existed. *Id.* The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit. *Id.* at 354-55. The reliability of the affiant and his sources of information are part of the "totality of the circumstances" that the magistrate should evaluate in making his probable cause determination. *Johnson v. State*, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex. Crim. App. 1991); *Morris v. State*, 62 S.W.3d 817, 824 (Tex. App.—Waco 2001, no pet.). A magistrate is entitled to rely on information supplied by a private citizen since, unlike many police informants, they are much less likely to produce false or untrustworthy information. *Johnson*, 803 S.W.2d at 289; *Morris*, 62 S.W.3d at 824. When determining a motion to suppress evidence seized through execution of a search warrant, courts including the trial court cannot review the substantive issue independently or de novo but must give great deference to the magistrate's probable cause determination to issue a warrant. *Lane v. State*, 971 S.W.2d 748, 750-51 (Tex. App.—Dallas 1998, pet. ref'd).

In this case, some of the underlying circumstances of which the magistrate was informed through the affidavit at the time of the issuance of the search warrant were: (1) a concerned citizen's statement that Coker was involved in the manufacture of methamphetamine at his residence where he lived with his eight-year-old daughter and (2) the recovery from one search of Coker's trash of methamphetamine and three empty one-gallon cans of Toluox, one empty one-gallon can of camp fuel, a miscellaneous number of empty bottles, one pint bottle of peroxide, one one-gallon plastic jug of iodine, one full bottle of Methylsulfonylmethane (MSM), one empty one-quart bottle of drain cleaner, a miscellaneous number of iodine stained funnels, numerous iodine and/or red phosphorous stained paper coffee filters, a miscellaneous number of pieces of rubber tubing stained from iodine exposure, one HCL-generator, one glass coffee pot stained from processing red phosphorous, numerous small size bottles of tincture of iodine, assorted rubber gloves showing exposure to iodine and red phosphorous, and a piece of mail addressed to Jeff Coker at the target residence.

The magistrate was entitled to rely on the information provided by the private citizen. *See Johnson*, 803 S.W.2d at 289; *Morris*, 62 S.W.3d at 824. The letter addressed to Coker provided a direct link between the drugs in Coker's trash and Coker's house. *See State v. Raymer*, 786 S.W.2d 15, 17 (Tex. App.—Dallas 1990, no pet.). In addition to the methamphetamine recovered from appellant's trash, police recovered what amounted to a "methamphetamine lab in a bag," a variety of items used in the manufacture of methamphetamine. *See Guerrero v. State*, 305 S.W.3d 546, 549 (Tex. Crim. App. 2009) (manufacture of methamphetamine involves use of pseudoephedrine, iodine, red phosphorous, hydrogen peroxide, and container in which to heat ingredients together); *Webb v. State*, 275 S.W.3d 22, 27-28 (Tex. App.—San Antonio 2008, no pet.) (describing process used to make methamphetamine utilizing iodine, lye, segmented water hoses, razor blades, acetone, coffee

filters, hydrogen peroxide, charcoal lighter fluid, and red phosphorous from matchbooks). Roberds' affidavit stated manufacturers of methamphetamine keep precursors and paraphernalia used for manufacturing, packaging, diluting, and weighing the controlled substance, including but not limited to red phosphorous, iodine, boiling flasks, glass beakers, fluted paper filters, funnels, rubber tubing, glass cooking pots, glass jars, and plastic bags.

Coker argues "a single discovery of drug residue in a trash receptacle combined with a conclusory tip from an unidentified confidential informant" was insufficient to establish probable cause to search his residence. In making this argument, Coker initially cites *Serrano v. State*, 123 S.W.3d 53, 62-63 (Tex. App.—Austin 2003, pet. ref'd), and *State v. Davila*, 169 S.W.3d 735, 740 (Tex. App.—Austin 2005, pet. ref'd), for the proposition that a single trash search cannot, by itself, establish probable cause to search a residence.

In *Serrano*, the search warrant affidavit indicated that the affiant-officer "relied heavily upon a tip from an unidentified confidential informant who had provided reliable information in the past in narcotics cases." *Serrano*, 123 S.W.3d at 60. The tip was that "*a* Daniel Serrano, a 25-year-old Hispanic male" was dealing cocaine in the Austin, Travis County area and that he had a 30-year-old brother, Earnest. *Id.* The affidavit did not state when the tip was received, when the informant obtained his information, or when the described incident took place. *Id.* at 61. The affiant-officer had not been given any other physical descriptions, addresses, or telephone numbers, but a search of the Austin police computer files revealed an entry for a Daniel Serrano and his brother, Earnest, at 1070 Mearns Meadow. *Id.* The files also contained an entry for a Daniel Serrano at 8513 Cornwall, and police set up surveillance at the Cornwall address. *Id.* at 62. The affiant-officer identified a man leaving the residence as Daniel Serrano based on a police photograph and retrieved a trash bag from a can set out by the curb. *Id.* The trash bag contained an advertisement addressed to the resident at 8513 Cornwall, a plastic baggie

with the end tied off in a manner that dealers use to package cocaine, and another plastic baggie with a white powder residue. *Id.* The affidavit stated: "Your affiant conducted an analysis on the plastic baggie containing the off-white powder residue with positive results for cocaine." *Id.* Looking at the four corners of the affidavit, the court concluded the magistrate did not have a substantial basis for concluding probable cause existed. *Id.* at 63. In reaching this decision, the court stated, "Standing alone, the one-time intrusion into a garbage can revealing cocaine residue in one plastic baggie along with an empty tied-off plastic baggie would not justify a finding of probable cause to search 8513 Cornwall." *Id.*

Similarly, in *Davila*, the affiant-officer received a tip from a confidential informant who had provided "information regarding narcotics trafficking and transactions" in the past. *Davila*, 169 S.W.3d at 738. The informant provided "information . . . regarding cocaine and marijuana being possessed" at a certain address. *Id.* The affiant-officer went to the address and retrieved garbage bags that had been set out by the curb for pick up. *Id.* Inside the garbage bags was a single "gallon size clear bag with a green leafy substance inside" that tested positive for marijuana. *Id.* Citing *Serrano*, the court concluded "the one-time discovery of a single plastic bag containing marihuana residue in the garbage [at the subject residence] did not establish probable cause to search the house in light of the totality of the other circumstances." *Id.*

Coker argues *Serrano* and *Davila* stand for the proposition that a single trash search cannot establish probable cause. In further support of this argument, Coker cites this Court's opinion in *State v. Dickson*, No. 05-07-01542-CR, 2008 WL 3867643, at *1-3 (Tex. App.—Dallas Aug. 21, 2008, no pet.) (not designated for publication). In *Dickson*, the appellant lived with her parents and younger sister K. *Id.* at *1. The affiant-officer relied on information from two confidential informants: CI#1, a twelve-year-old child, and CI#2, an informant of unspecified age or gender. *Id.* CI#1 told the affiant-officer that, six days before the warrant was

–7–

requested, she received "alprazolam, marijuana, alcohol, and possibly propoxyphene" from K.'s mother at the residence. *Id.* CI#1 also stated that a "young female" had "possibly overdosed" over the past weekend but contained no other details of the alleged overdose. *Id.* CI#2 stated that, in an "on-line chat" between K. and a third party, K. represented that she "might" be getting "shrooms" the following day, but she was "not sure." *Id.*

On the day he requested the search warrant, the affiant-officer conducted an "abandoned property search" of a trash receptacle located in the roadway in front of appellant's house. *Id.* at *2 The trash receptacle contained two pieces of discarded mail addressed to appellant's mother as well as several marijuana stems and a broken glass marijuana pipe with residue. *Id.* Finally, the affiant-officer stated that individuals who had the same names as members of appellant's household had "criminal histories" for possession of marijuana. *Id.* A panel of this Court concluded the information obtained from CI#1 did not provide any facts concerning any amounts of marijuana observed and provided little factual basis to conclude drugs would remain on the premises days later. *Id.* The information from CI#2, that K. "might" be getting mushrooms, similarly did not support a determination that any controlled substance, much less marijuana, would probably be in the residence on the date of the search. *Id.* Thus, the Court in *Dickson* was left with a "single abandoned property search." *Id.* The Court noted that nothing in the affidavit would have enabled the magistrate to determine how long the trash receptacle had sat in the roadway or would have suggested large quantities, sales, or cultivation of marijuana was involved to support an inference that contraband probably remained in the residence. *Id.* Thus, the totality of the circumstances did not provide the magistrate with a substantial basis to conclude marijuana probably was in the residence at the time of the search. *Id.*

Coker goes on to argue that a single trash search can establish probable cause only when "coupled with a substantial amount of other incriminating facts." *See Gonzalez v. State*, No. 14-

–8–

06-01127-CR, 2008 WL 2580061, at *1 (Tex. App.—Houston [14th Dist.] July 1, 2008, pet. ref'd) (mem. op, not designated for publication) (affidavit sufficient where tip came from confidential informant who had proved reliable in the past, officer saw appellant place trash at curb, search of trash revealed three large plastic wrappers with marijuana residue, one clear plastic bag with marijuana residue, and two articles of mail in appellant's name); *Rose v. State*, No. 04-04-00344-CR, 2005 WL 16264, at *1-2 (Tex. App.—San Antonio Jan. 5, 2005, no pet.) (mem. op, not designated for publication) (affidavit sufficient where affiant described "large amounts of vehicle traffic" at appellant's residence, officer observed appellant making "hand to hand" transactions with occupants of vehicles, vehicular traffic was constant but more frequent on Fridays and Saturdays, officer conducted traffic stop of vehicle observed at appellant's residence and found driver in possession of marijuana and note with appellant's phone number, and single search of appellant's trash revealed suspected marijuana seeds, stems, and what appeared to be packaging material containing suspected marijuana residue); *Robertson v. State*, No. 10-01-00256-CR, 2003 WL 21816119, at *1 (Tex. App.—Waco July 23, 2003, no pet.) (mem. op, not designated for publication) (affidavit sufficient where tip came from confidential informant, officer observed marijuana plants growing in appellant's yard consistent with tip, appellant's electricity usage was twice that of comparable neighbor, and single trash search of two garbage bags revealed "several" marijuana plants).

We conclude that the trash search in this case was sufficient to establish probable cause to search Coker's house in light of the totality of the circumstances. This case is similar to those cases where a single trash search revealed the presence not only of residue of a controlled substance but was coupled with other circumstances. Further, in this case, officers conducted surveillance two days in a row at Coker's residence, establishing that the searched trash bags were present both days. We conclude the presence of the "methamphetamine lab in a bag" in

this case, in light of the totality of the circumstances, provided the magistrate with a substantial basis to conclude methamphetamine was probably in Coker's residence at the time of the search. *See Duarte*, 389 S.W.3d at 354; *Lane*, 971 S.W.2d at 750-51.  We sustain the State's sole issue.

We reverse the trial court's orders granting Coker's motions to suppress and remand this cause for further proceedings.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Publish
TEX. R. APP. P. 47

120616F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-12-00616-CR     V.

JEFFREY BRIAN COKER, Appellee

On Appeal from the 291st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F10-23998-U.
Opinion delivered by Justice Bridges.
Justices FitzGerald and Myers participating.

Based on the Court's opinion of this date, the trial court's order granting Jeffrey Brian Coker's motion to suppress is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered July 17, 2013

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-12-00617-CR      V.

JEFFREY BRIAN COKER, Appellee

On Appeal from the 291st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F09-24977-U.
Opinion delivered by Justice Bridges.
Justices FitzGerald and Myers participating.

Based on the Court's opinion of this date, the trial court's order granting Jeffrey Brian Coker's motion to suppress is **REVERSED** and the cause **REMANDED** for further proceedings consistent with this opinion.

Judgment entered July 17, 2013

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

–12–