**REVERSE and REMAND; and Opinion Filed December 17, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01619-CR

### THE STATE OF TEXAS, Appellant
### V.
### SHAUNA LEE GREEN, Appellee

### On Appeal from the Criminal District Court No. 4
### Dallas County, Texas
### Trial Court Cause No. F11-21583

## OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice FitzGerald

In the course of this prosecution for methamphetamine possession, the trial judge granted appellee Shauna Lee Green's motion to suppress certain evidence. The State appeals. We reverse.

## I. BACKGROUND

In the summer of 2011, the police began investigating some incidents of prescription fraud. Eventually their investigation led them to suspect that appellee and her husband Jim Bob Green were involved in illegal, drug-related activity. After surveilling the Greens' house for a few days, detectives searched some trash obtained from trash cans at their residence. Based on the contents of the trash cans and other evidence gathered in the course of the investigation, a detective prepared an affidavit for search warrant and presented it to a magistrate. The

magistrate issued a search warrant for the Greens' residence, authorizing and directing the police to search for illegal drugs and related items. The police executed the search warrant and recovered a number of items from the residence.

Appellee was then indicted for possession of methamphetamine in an amount less than one gram. Appellee filed a motion to suppress all evidence resulting from the search pursuant to warrant. After conducting a hearing, the trial judge granted appellee's motion. In his order, the judge recited that "the affidavit in support of the search warrant failed to provide probable cause." The State timely perfected this appeal.[1]

## II. ANALYSIS

In a single issue, the State argues that the trial judge erred by granting appellee's motion to suppress.

### A. Applicable law

A magistrate may not issue a search warrant without first finding that there is probable cause that a particular item will be found at a particular location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). Probable cause for a search warrant exists if, under the totality of the circumstances presented to the magistrate, there is at least a fair probability or a substantial chance that contraband or evidence of a crime will be found at a specified location. *Id*. Probable cause does not require a showing that it is more likely than not that the item or items in question will be found at the specified location. *Id*. The magistrate may interpret a probable-cause affidavit in a common-sense manner and may draw reasonable inferences from it. *Id*.

We review the trial judge's decision that the magistrate lacked probable cause to issue a search warrant under a de novo standard of review. *State v. Wester*, 109 S.W.3d 824, 826 (Tex.

---

[1] Jim Bob Green was indicted for possession of methamphetamine in an amount between one and four grams, and he also succeeded in suppressing evidence. We decide the State's appeal in his case, No. 05-12-01618-CR, at the same time we decide this appeal.

App.—Dallas 2003, no pet.).  By contrast, we give great deference to the magistrate's decision to issue the warrant, inquiring whether under the totality of the circumstances the magistrate had a substantial basis for concluding probable cause existed.  *Id*.; *see also State v. Coker*, 406 S.W.3d 392, 395 (Tex. App.—Dallas 2013, pet. ref'd).  The substantial-basis standard of review "does not mean the reviewing court should be a rubber stamp but does mean that the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon de novo review."  *Flores*, 319 S.W.3d at 702 (internal quotations and citation omitted).  We must consider the totality of the circumstances contained within the four corners of the affidavit in reviewing the magistrate's determination, and we should not read any parts in isolation from the rest.  *See State v. Jordan*, 342 S.W.3d 565, 570, 571 (Tex. Crim. App. 2011).  Moreover, we do not focus on what other facts could or should have been included in the affidavit; rather, we focus on the combined logical force of the facts that are in the affidavit.  *Coker*, 406 S.W.3d at 396.

**B.      The probable-cause affidavit and other evidence**

Detective Ralph Woods of the Duncanville Police Department executed the probable-cause affidavit.  The affidavit supported the following facts, which ultimately led the police to believe appellee's residence at 433 Vincent Street in Cedar Hill contained drugs or other evidence.

In August 2011, a CVS Pharmacy pharmacist reported a forged prescription for hydrocodone-APAP to the Duncanville Police.  The prescription had been presented by a woman named Andrea Takats two days earlier.  Later, the police investigated another report of a fraudulent hydrocodone prescription, this time at a Kroger pharmacy in Duncanville.  This prescription bore the name Andrea Takats and listed an address, 318 Shorewood in Duncanville.  In October 2011, an undercover detective recovered a plastic trash bag from the curb in front of

the residence at 318 Shorewood. Examining the bag's contents later, the detective found a photocopied prescription form from Dr. Felix Starghill, D.D.S. and Associates, P.C. The patient information appeared to have been removed during previous alterations, and the prescription section contained liquid paper covering unknown writing. The detective contacted Dr. Starghill, who reported that many fraudulent prescriptions had been filled recently with his name listed as the authorizing doctor. Dr. Starghill also reported that he had written a Motrin prescription for his patient Andrea Takats a few months earlier, and that the fraudulent prescriptions began to appear after that time.

Police officers obtained a search warrant for 318 Shorewood, and they executed that warrant on October 12. Ronald Takats was present at the time and admitted that he had used methamphetamine two days earlier. Ronald Takats also said that Andrea Takats was his daughter and that she was obtaining prescription medications and selling them. In the search, the police recovered several items of interest, including some marijuana and a variety of medication caplets and capsules. The police also recovered three bottles of prescription medication with labels made out to "Yolanda Carr."

A person named Rosanna Rushing was also present at 318 Shorewood at the time of the search. She told the police that she had been staying at the Takats residence for a couple of days, and that an older white woman named "Sherrie," who drove a blue Mercedes, had come to the residence during that time. Rushing's cell phone contained a telephone number for "Sherrie home," and a computer check revealed that the telephone number was registered to Ken Howell of 1233 Sawsawi Trail in Desoto. Further investigation revealed that Sherrie Marie Howell lived at the same residence.

The police began surveilling 1233 Sawsawi Trail in Desoto. On two different occasions, detectives seized and searched trash bags recovered from outside that residence. Inside the trash

bags they discovered items consistent with illegal drug use and drug trafficking. They also discovered a piece of paper containing apparent narcotics notations, including some names listed in conjunction with fractional amounts and apparent dollar amounts. The names included "Andrea" and "Jb." The police obtained a search warrant for 1233 Sawsawi Trail and executed that warrant on October 21. Sherrie Howell, her son Michael Craig Lucas, Jr., and two other people were present. During the search, the police found several items of interest, including some marijuana, a pipe with methamphetamine residue, and some empty medicine vials. Sherrie Howell told the police that the vials belonged to her son's friend "JB." Kenneth Howell arrived at the residence during the search and told the police that he was Sherrie's husband. He gave the police some additional information about "JB." He said that he had recently sold a vehicle to JB, that JB and his wife "Shauna" were both nurses, and that JB was a white man about 50 years old. Kenneth Howell told the police that he suspected his wife and stepson (Lucas) were getting prescription medications from JB. Howell gave the police JB's telephone number. The police reviewed the text messages on a cellphone taken from one of the other people present at the residence, Brandy Ainsworth, and there was text message from "Jb" that read, "Sorry I fell asleep this afternoon. I'm at work but I have the cash for that quarter. ☺,)." The term "quarter" is used to refer to a certain weight of drugs, usually marijuana.

The police began to investigate "JB" and "Shauna." They discovered that the telephone number provided by Howell was Jim Bob Green's home telephone number at 433 Vincent Street in Cedar Hill. Appellee and Jim Bob Green were both listed in the Texas nurse registry. Jim Bob Green had two prior arrests. On October 25, the police began to surveil the residence at 433 Vincent Street. On that date, Detective Hunt observed Sherrie Howell's vehicle parked in the front yard of that residence. On October 26, Detective Hunt observed a white man come out of the residence and water the front lawn; the individual matched the description and prior arrest

photograph of Jim Bob Green. On October 27, Detective Hunt observed Jim Bob Green and someone who appeared to be Michael Lucas speaking together in the front yard. Lucas then went inside, brought out some trash bags, and put them in a trash can on the north side of the residence.

On the morning of October 28, Detective Hunt saw Jim Bob Green drag two trash cans from a small, fenced-in area to the curb. A few minutes later, Green put two semi-transparent, blue trash bags into the trash cans, on top of the trash that was already in them. A few minutes after that, a woman matching appellee's description drove up and parked in front of the residence. Then Detective Hunt saw a person believed to be Michael Lucas, who loaded several large items into the back of a pick-up truck parked in the driveway. The pick-up truck then drove away with at least two occupants inside. Detective Hunt then observed Jim Bob Green doing some yard work around the residence. Detectives Hunt and Woods maintained visual contact with the trash cans and saw no one else approach them that morning. They obtained the trash bags at about 10:05 that morning and searched them at a secure location. Detective Woods's search-warrant affidavit recites the items they recovered as follows:

The bags retrieved included two black plastic bags with red cinch ties, a white plastic bag, a clear plastic bag, and the two previously described semi-transparent blue plastic bags.

Detectives Hunt and Woods conducted a search of the bags for items of interest. Inside the two blue tinted bags, Detective Hunt found items including: a paper piece with an apparent printed work schedule bearing the name of "J.Green LVN"; a prescription bottle for valproic acid with an attached label identifying the patient as "Yolanda Carr"; a syringe with an attached needle (missing cap) and two separate needle caps wrapped in paper towel and clear tape; an insulin syringe with the plunger and needle caps in place; packaging for two cotton tip applicators; an empty precision needle package; two empty alcohol prep packages; a large clear needle cap; a large red (18 gauge) fill needle and cap in a sealed package; a large red (18 gauge) fill cap; a large B-D syringe; an opened and empty Metoprolol Tartrate 25 mg tablet package (lot ov937); an opened and empty Clonidine HCl 0.1 mg. USP tablet package (lot # P-14982); and a partially filled 0.9% Sodium Chloride injection syringe bearing "list #1078-20", "RX only", and "Hospira RL-2958".

Detectives Hunt and Woods searched the remaining trash bags and found additional items of interest. These items included: an opened and empty Clarithromycin 500 mg tablet package (lot # 0M505); a large B-D syringe with an attached fill needle with red needle cap; a red fill needle cap; a smaller syringe with no attached needle; a South Hampton Community Hospital (2929 South Hampton Road, Dallas, Texas 75224) envelope bearing the handwritten names of "Shauna Green or Jim Green"; a business card; four receipts; an empty CVS eye pad package; and a handwritten notation (Kays Tower KT-08-A, Book-in number 11070045, Hold For TDC).

Detective Hunt recognized the name, "Yolanda Carr" on the prescription bottle found in the trash. Detective Hunt recalled collecting three additional prescription bottles, bearing the name "Yolanda Carr", from the residence at 318 Shorewood Drive, Duncanville, Texas during the execution of the search warrant at that location on 10/12/11. In addition, Detective Hunt noted that the evidence found inside the trash was exactly the same type of drug paraphernalia found inside the 1233 Sawsawi, Desoto, Texas residence when the search warrant was executed at that location on 10/21/11. Detective

Hunt reviewed photographs from the search warrant execution at 1233 Sawsawi, Desoto, Texas and noted a photograph of a partially filled 0.9% Sodium Chloride injection syringe bearing "list #1078-20" and "RX only". Detective Hunt noted that this information exactly matched the syringe found in the trash at 433 Vincent on 10/28/2011. The items described above were photographed and processed for evidence storage.

That afternoon, the police obtained a search warrant from a magistrate to search the residence at 433 Vincent. The warrant was executed, and the record contains Detective Woods's inventory of the items recovered in the search. Those items included numerous "meth pipes" and "marijuana pipes," marijuana, and containers containing "white powder."

Appellee called two witnesses to testify at the hearing on her motion to suppress. One was a licensed nurse named Milton Jones, Jr. He testified that none of the items recovered from the trash outside 433 Vincent was illegal or contraband. He also testified that the items recovered were common medical items that any working nurse might bring home from work in

his or her pocket and then discard. The other witness was Detective Hunt, who agreed that none of the items recovered from the trash was inherently illegal.

## C.       Application of the law to the facts

The State argues that the affidavit supported facts raising a fair probability that illegal drugs and evidence related to drug trafficking would be found at 433 Vincent. Our task is to ascertain whether a reasonable reading of the probable-cause affidavit would lead the magistrate to the conclusion that the four corners of the affidavit provide a substantial basis for issuing a search warrant. *See Coker*, 406 S.W.3d at 395. We conclude that it does.

The affidavit shows that the police initially investigated Andrea Takats for prescription fraud. When the police searched 318 Shorewood Drive in connection with that investigation, they discovered evidence of drug-related crimes, including but not limited to marijuana, methamphetamine pipes, numerous pills, and three prescription bottles that had been filled for someone named Yolanda Carr. Rosanna Rushing, who was present at 318 Shorewood when the search took place, said that a woman named "Sherrie" had previously come to the residence while Rushing was there. Further investigation led the police to 1233 Sawsawi Trail, a residence associated with Kenneth and Sherrie Howell. An apparent drug ledger recovered from the trash at 1233 Sawsawi Trail mentioned both "Andrea" and someone referred to as "Jb." When the police obtained a warrant and searched 1233 Sawsawi Trail, they found more evidence of drug-related crimes, including but not limited to marijuana, "meth pipes," pills, and vials. Sherrie Howell told the police that the vials belonged to "JB." When Kenneth Howell arrived at the residence during the search, he gave the police more information about "JB." He gave the police JB's phone number and a general description of JB, told them that JB and his wife Shauna were nurses, and told them that he suspected Sherrie Howell and her son Michael Lucas were getting prescription drugs from JB. Moreover, someone else present at 1233 Sawsawi Trail during the

search had a cellphone containing a text message from "Jb" suggesting that "Jb" wanted to purchase drugs.

Using the information obtained from their investigation of 1233 Sawsawi Trail, the police determined that "JB" and "Shauna" were probably appellee and her husband Jim Bob Green, who were listed in Texas's nurse registry and who were connected to the residence at 433 Vincent Street through "JB's" telephone number and through subsequent visual surveillance. The police observed Sherrie Howell's vehicle at 433 Vincent on one occasion and observed someone who appeared to be Michael Lucas at 433 Vincent on two other occasions. The police observed someone who appeared to be Jim Bob Green place two blue trash bags into trash cans on the curb. The police maintained visual contact with the trash cans to ensure that no one not associated with the residence approached them. They later searched the contents of the trash cans, and they found a prescription bottle with a label made out to Yolanda Carr in one of the blue trash bags. This connected the residence at 433 Vincent to the residence at 318 Shorewood Drive where three similarly labeled bottles had been found along with other evidence of illegal drug-related activity. The blue trash bags also contained a syringe bearing the markings "list #1078-20" and "RX only," which matched the markings on a syringe previously recovered from 1233 Sawsawi Trail along with other evidence of illegal drug-related activity.

We conclude that the affidavit was sufficient to give the magistrate a substantial basis for concluding that probable cause existed to search 433 Vincent. Prior searches at the residences on Shorewood Drive and Sawsawi Trail had yielded evidence of illegal drug trafficking involving people associated with those residences and also someone referred to as "Jb." Kenneth Howell identified "JB" for the police by description, occupation, and telephone number, and he informed the police that he believed JB was supplying Sherrie Howell and Michael Lucas with prescription narcotics. This information led the police to Jim Bob Green, appellee, and the

–9–

residence at 433 Vincent. Only a few days after the search at 1233 Sawsawi Trail, the police observed Sherrie Howell's vehicle at 433 Vincent and also observed someone who appeared to be Michael Lucas entering and leaving that residence. Then the police observed someone who appeared to be Jim Bob Green put two distinctive blue trash bags into the trash cans outside 433 Vincent. The police maintained visual contact with the trash cans, and shortly thereafter they recovered their contents. The blue trash bags contained a prescription bottle made out to Yolanda Carr, like three bottles recovered from 318 Shorewood Drive, and a syringe bearing the same markings as a syringe previously recovered from 1233 Sawsawi Trail. Based on the totality of the facts and circumstances related in the affidavit, and recognizing that the magistrate's decision is entitled to great deference, we conclude that the magistrate had a substantial basis to conclude that the residence at 433 Vincent probably contained illegal drugs or related evidence at the time of the search.

Our opinion in the *Coker* case supports our decision in the instant case. In that case, the search-warrant affidavit recited the following facts. The police received an anonymous tip that Coker was manufacturing methamphetamine at his residence in Garland. 406 S.W.3d at 394. The police conducted surveillance of the residence and seized a trash can that had been placed next to the street for collection. *Id*. The trash can was found to contain methamphetamine and equipment known to be used in the manufacture of methamphetamine. *Id*. at 396–97. A magistrate issued a search warrant based on these facts, but the trial court later granted Coker's motion to suppress. *Id*. at 395. The State appealed and we reversed, holding that the anonymous tip plus the contents of Coker's trash can were sufficient for the magistrate to conclude methamphetamine was probably in Coker's house. *See id*. at 396, 399. In the instant case, the search-warrant affidavit proved facts connecting Jim Bob Green both to illegal drug activities and to the residence at 433 Vincent. The affidavit also proved facts connecting Jim Bob Green

–10–

to the trash bags recovered by the police from that address, and those trash bags contained evidence (the prescription drug bottle made out to Yolanda Carr and the syringe) that tended to show a connection to the two other residences where evidence of criminal drug-related activity had previously been found.

Appellee argues that the tip received from Kenneth Howell was conclusory, unreliable, and should have been given no probative weight by the magistrate. We disagree. Howell told the police that he suspected Sherrie Howell and Michael Lucas of "doing other type drugs" besides marijuana, and that he suspected "JB" was providing prescription drugs to Sherrie Howell and Michael Lucas. He gave the police information about JB tending to show that JB was in fact Jim Bob Green. He also told the police that on one occasion he had come home and found JB and JB's good friend Ronald Takats (the father of Andrea Takats, who was implicated in the activities related to 318 Shorewood) talking to Sherrie Howell. Howell's report that JB was involved in drug trafficking was corroborated by the apparent drug-ledger page mentioning "Jb" that was recovered from 1233 Sawsawi Trail, by the text message in which "Jb" appeared to be interested in buying drugs, and by the contents of the trash at 433 Vincent. Based on the totality of the circumstances, the magistrate was entitled to give some weight to Kenneth Howell's tip.

Appellee then argues that, once Howell's tip is disregarded, the magistrate's decision cannot be justified solely by the results of the single trash search at 433 Vincent. We have rejected appellee's premise that Howell's tip should be given no weight in the probable-cause analysis, and we reject this argument as well. As the Supreme Court has said,

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983).  As recounted above, the affidavit in this case proved up several facts that connected Jim Bob Green and 433 Vincent to drug trafficking and prescription fraud, and that justified a conclusion that there was a fair probability that drugs or other evidence of drug-related crimes would be found at 433 Vincent.  Giving great deference to the magistrate as we must, *see Coker*, 406 S.W.3d at 396, we conclude that the trial judge erred by granting appellee's motion to suppress.  We sustain the State's sole issue on appeal.

### III.   CONCLUSION

We reverse the trial judge's order granting appellee's motion to suppress and remand this cause for further proceedings.


                                                     /Kerry P. FitzGerald/
                                                     KERRY P. FITZGERALD
                                                     JUSTICE


Do not publish
TEX. R. APP. P. 47

121619F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-12-01619-CR     V.

SHAUNA LEE GREEN, Appellee

On Appeal from the Criminal District Court
No. 4, Dallas County, Texas
Trial Court Cause No. F11-21583.
Opinion delivered by Justice FitzGerald.
Justices Francis and Myers participating.


       Based on the Court's opinion of this date, the trial court's order granting Shauna Lee Green's motion to suppress is **REVERSED** and the cause **REMANDED** for further proceedings consistent with the opinion.


Judgment entered this 17th day of December, 2013.


                       /Kerry P. FitzGerald/
                       KERRY P. FITZGERALD
                       JUSTICE