

# NUMBER 13-12-00745-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

---

**THE STATE OF TEXAS,**                                                  **Appellant,**

**v.**

**RANDON ROMERO,**                                                     **Appellee.**

---

### On appeal from the 25th District Court
### of Gonzales County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Perkes, and Longoria
### Memorandum Opinion by Justice Perkes

The State appeals the trial court's order granting appellee Randon Romero's motion to suppress.[1] Appellee was charged by indictment with possession with intent to

---

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through 2013 3d C.S.)

(a) The State is entitled to appeal an order of a court in a criminal case if the order:

deliver cocaine in an amount greater than or equal to four grams, but less than two hundred grams, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d) (West, Westlaw through 2013 3d C.S.). By a single issue, the State contends "the trial court erred when it granted appellee's motion to suppress by examining the search warrant in a hypertechnical manner, [by] not affording the proper deference to the magistrate, and [by] failing to recognize the preferential treatment that search warrants are afforded." We reverse and remand.

## I. BACKGROUND

During appellee's suppression hearing, the trial court reviewed the police officer's affidavit on which the magistrate issued a search warrant for appellee's residence. The affidavit reads, in full:

> The undersigned AFFIANT, being a PEACE OFFICER under the laws of The State of Texas and being duly sworn upon oath, makes the following statements and accusations:
>
> 1. There is in Gonzales County, Texas, a suspected place and premises described and located as follows: An Apartment Building located at 200 Carroll Street in Gonzales, Texas. The Building has three apartments contained within it. The building is a tan cement block structure with brown doors and trim. The Apartment door faces south and is located on the east end of the building. The apartment has #3 affixed to the front porch support near the front door.
>
> 2. Said suspected place is in the charge of and controlled by each of the following named and/or described suspected parties (hereafter called "suspected party," whether one or more), to wit: Randon Romero Date of Birth 05/24/1985

---

(5) grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case.

2

3. It is the belief of affiant that said suspected party has possession of and is concealing at said suspected place the following property: a firearm used to shoot at 519 Hopkins.

4. Affiant has probable cause for said belief by reason of the following facts and circumstances: Officers responded to two shootings that occurred on July 5, 2011 at 519 Hopkins Street in Gonzales, Texas. The first shooting occurred at 4:55 Am [sic] and the second occurred at 5:47 am on both occasions the Actor was identified by witnesses as Jerome Espinosa. .40 caliber casings were located in the street in [the] area that the witnesses stated they saw the shots coming from. A bullet was recovered from the wall of 519 Hopkins. Officer Camarillo located Jerome Espinosa's vehicle behind 200 Carroll Street, Apartment #3, the suspected party's residence. Officer Camarillo knocked on the door and the suspected party answered the door. When Officer Camarillo initially asked the suspected party where Jerome Espinosa was he indicated that he did not know. After telling the suspected party that he (Officer Camarillo) had already seen Espinosa's vehicle behind his Apartment, the suspected party acknowledged that Espinosa was there. The suspected party called Espinosa to the door where he was arrested at 7:52 a.m. Espinosa did not have a firearm on his person when he was arrested. Espinosa's vehicle was searched and no weapon was located.

**WHEREFORE**, AFFIANT REQUEST THE ISSUANCE OF A WARRANT AUTHORIZING HIM TO SEARCH SAID SUSPECTED PLACE AND PREMISES INCLUDING CURTLIAGE FOR SAID PROPERTY AND SEIZE IT.

No witnesses testified at the hearing, and both sides focused exclusively on the search warrant.[2] The trial court granted the motion to suppress:

It is therefore ORDERED that the following items of evidence be and are HEREBY SUPPRESSED:

A Pringles Can containing baggies with residue, An envelope containing

---

[2] While conducting the search, the police officer saw in plain view a small clear bag containing a white substance which he believed to be cocaine and a clear plastic bag containing a green leafy substance that he believed to be marijuana. The police officer then submitted a second affidavit and obtained a second search warrant for the premises. The focus at the hearing, however, was solely on the first affidavit because of the belief that the second affidavit may have been subject to a fruit of the poisonous tree theory. *See Wong Sun v. United States*, 371 U.S. 471, 484, 487–88 (1963) (explaining that exclusionary rule applies to evidence "obtained either during or as a direct result of" Fourth Amendment violation).

white rock like substance, A Great Value Box with two baggies containing white powder residue, A beef jerky can with small baggie containing five (5) colored unknown pills and two (2) baggies containing white rock like substance, United States Currency totaling $3,420.00 and a name ledger.

## II. STANDARD OF REVIEW

When reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review that gives almost total deference to the historical facts found by the trial court and review de novo the trial court's application of the law to those facts. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). "However, when the trial court is determining probable cause to support the issuance of a search warrant, there are no credibility determinations, rather the trial court is constrained to the four corners of the affidavit." *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011).

Consequently, when we review the magistrate's decision to issue a warrant, "we apply a highly deferential standard to the magistrate's determination because of the constitutional preference that searches be conducted pursuant to a warrant." *See Moreno v. State*, 415 S.W.3d 284, 287 (Tex. Crim. App. 2013) (citing *Illinois v Gates*, 462 U.S. 213, 238 (1983)); *see also McLain* 337 S.W.3d at 271. The reviewing court should avoid reviewing the affidavit in a "hypertechnical" manner and instead interpret it in a "commonsensical and realistic manner," recognizing that the magistrate may draw reasonable inferences and, when in doubt, defer to all reasonable inferences that the magistrate could have made. *McLain* 337 S.W.3d at 272.

As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the probable-cause determination. *Id.* at 271. "Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that

contraband or evidence of a crime will be found at the specified location." *See Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007) (citing *Gates*, 462 U.S. at 238); *see also Hennessy v. State*, 660 S.W.2d 87, 92 (Tex. Crim. App. [Panel Op.] 1983) (holding magistrate's findings are reviewed in light of totality of circumstances presented in affidavit.). "It is a 'flexible and non-demanding' standard." *Rodriguez*, 232 S.W.3d at 60. Thus, when reviewing a magistrate's decision to issue a search warrant, the inquiry for the reviewing court is not whether there are facts that could have or should have been included in the affidavit but "whether there are sufficient facts, coupled with inferences from those facts, to establish a 'fair probability' that evidence of a particular crime will likely be found at a given location." *Id.* at 62. The focus of a reviewing court is on the combined logical force of facts that are present in the affidavit, not those that are omitted from the affidavit. *Id.*

## III. DISCUSSION

By its sole issue, the State argues the trial court erred when it granted appellee's motion to suppress.[3] We agree.

The facts presented in the affidavit, together with reasonable inferences from those facts, show there was a fair probability the firearm was in appellee's apartment—where the officers found Espinosa two hours after the shooting and where appellee tried to help Espinosa evade the officers by lying to them. According to the affidavit,[4] multiple

---

[3] In its brief, the State identified a number of comments made by the trial court during the hearing. However, we need not focus on the trial court's statements because our de novo review is limited to the four corners of the affidavit. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011).

[4] The trial court expressed concern that the affidavit did not indicate whether the warrant sought "an instrumentality of an offense" or was an evidentiary search warrant. This observation is correct, but our review focuses more on whether the magistrate had a substantial basis for concluding that probable cause

witnesses informed the officers that responded to the two reported shootings that Jerome Espinosa was the shooter.   Just two hours after the second shooting, the officers found Espinosa's vehicle parked behind appellee's apartment and correctly surmised that Espinosa was inside appellee's apartment.   When they talked to appellee, however, appellee lied and tried to protect Espinosa, pretending that he did not know where Espinosa was located.   Only after the officers informed appellee that they had already seen Espinosa's vehicle outside did appellee acknowledge Espinosa's presence in his apartment.   After the officers arrested Espinosa, they performed a search of Espinosa's person and vehicle.   They failed to uncover the firearm that he allegedly used a couple of hours earlier.

We recognize this affidavit required some inferences by the magistrate, but, considering the totality of circumstances presented in the affidavit, we hold that any inferences were reasonable.   *See McLain*, 337 S.W.3d at 272.   First, it was reasonable for the magistrate to infer that the police received a reliable report of two shootings and the identification of the shooter from several trustworthy observers.   *See State v. Duarte*, 389 S.W.3d 349, 355–56 (Tex. Crim. App. 2012) (stating a citizen-informer is presumed to speak with truth and is inherently reliable).   Because the affidavit used the word "witnesses" and did not connote they were "informant[s] 'from the criminal milieu,'" *Duarte*,

---

existed, *see McLain*, 337 S.W.3d at 271, and what type of search warrant the probable cause mandates is collateral to the probable-cause inquiry. Moreover, we note the magistrate could have reasonably deduced that the officers were seeking an evidentiary search warrant, and all that is required for an evidentiary search warrant is that the affidavit present facts showing that: (1) a specific offense has been committed, (2) the specifically described property or items that are to be searched for or seized constitutes evidence of that offense, and (3) the property or item to be seized constituting evidence to be searched for or seized are located there.   TEX. CODE CRIM. PROC. ANN. art. 18.01(c) (West, Westlaw through 2013 3d C.S.).

389 S.W.3d at 356, a magistrate could reasonably infer the witnesses were citizen informers, and thus the magistrate was entitled to "rely on the credibility of the affiant and his sources and the reliability of the information supplied in the affidavit." *Johnson v. State*, 803 S.W.2d 272, 289 (Tex. Crim. App. 1990) (en banc), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 272, 289 (Tex. Crim. App. 1991) (en banc); *see Duarte*, 389 S.W.3d at 356–57; *State v. Coker*, 406 S.W.3d 392, 396 (Tex. App.—Dallas 2013, pet. ref'd). Furthermore, the fact that multiple witnesses identified Espinosa, .40 caliber shell casings were recovered from the location where the shots were reported to have been fired, and a slug was recovered from a wall, it was reasonable to infer that the witnesses' information and identification of the shooting suspect were dependable.

Second, appellee's attempt to conceal Espinosa's whereabouts, who was located in the apartment just two hours after the second shooting, supports a reasonable inference that appellee was willing to continue helping Espinosa avoid police detection by keeping the firearm in the apartment.[5] Moreover, by locating Espinosa at appellee's apartment but not finding the firearm on his person or in his vehicle, there was a fair probability the firearm would be found at Espinosa's last known location, namely the apartment.

---

[5] Although the trial court questioned how the officers were able to locate and identify Espinosa's vehicle, wondering whether the officer ran the plates, whether he was familiar with the car, and whether he examined the car by testing how hot it was as to gauge how long the car had been there, we conclude the magistrate could reasonably infer the witnesses described Espinosa's vehicle, the officers already knew Espinosa, or the officers, through quick investigation, learned about Espinosa and his vehicle. Regardless, even assuming additional facts would shed light on the officers' background investigation, we are less concerned with what facts could have been included than whether the facts that actually were included in the affidavit created a fair probability that the gun was at the apartment. *See Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007).

We conclude that, based on the facts set forth in the affidavit and reasonable inferences from those facts, there was a substantial basis for a magistrate to conclude there was a fair probability the firearm from the earlier shooting would be located at appellee's apartment. *See Rodriguez*, 232 S.W.3d at 61.

We sustain the State's issue.

## IV.  CONCLUSION

We reverse the trial court's order granting appellee's motion to suppress and remand the cause to the trial court for further proceedings consistent with this opinion.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
28th day of August, 2014.

8