

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-13-00066-CR

JORDAN ALLEN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No 2
Lubbock County, Texas
Trial Court No. 2011-466,388, Honorable Drue Farmer, Presiding

August 12, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant Jordan Allen appeals from his conviction for possession of marijuana and the resulting sentence of confinement. He presents three issues. We will affirm.

Background

The parties are familiar with the facts surrounding appellant's prosecution and in this memorandum opinion we address only those facts necessary to disposition of the appeal.

Appellant was charged by information with the offense of possession of marijuana in an amount of four ounces or less but more than two ounces.[1] The marijuana was found in his residence in Lubbock. He filed a motion to suppress and a motion for a *Franks v. Delaware*[2] hearing. After hearings on both motions, the trial court denied both motions, and later filed findings of fact and conclusions of law.

Appellant then plead guilty to the charged offense and was sentenced to 270 days of confinement in the Lubbock County Jail. He now raises issues related to his pretrial motions.

Analysis

Applicable Law

Ordinarily, we review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the facts found by the court and reviewing *de novo* its application of the law. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). But when a trial court determines whether there was probable cause to support a search warrant, the analysis is limited to the four corners of the affidavit, and there are no credibility determinations to be made. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). "[B]ecause of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search," we review the sufficiency of an affidavit to determine if there is a substantial basis on which the magistrate could have concluded that probable cause

---

[1] TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(2) (West 2012).

[2] *See Franks v. Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L.Ed. 667 (1978).

2

existed. *Id. (citing Illinois v. Gates,* 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)). For the same reason, our review is highly deferential to the magistrate's decision. *Id.* (*citing Swearingen v. State,* 143 S.W.3d 808, 810-11 (Tex. Crim. App. 2004)). We extend this deference to the magistrate's determination to encourage the use of warrants, which "greatly reduces the perception of unlawful or intrusive police conduct." *Gates,* 462 U.S. at 236. "This 'substantial basis' standard of review 'does not mean the reviewing court should be a rubber stamp but does mean that the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon *de novo* review.'" *Flores v. State,* 319 S.W.3d 697, 702 (Tex. Crim. App. 2010), *quoting* W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.7(c), 452 (4th ed. 2004 & Supp. 2009-2010).

Under Texas law, no search warrant may issue without a sworn affidavit that sets forth facts sufficient to establish probable cause. *See* Tex. Code Crim. Proc. Ann. art. 18.01(b), (c) (West 2012). When reviewing a search warrant affidavit under the "substantial basis" standard, we must interpret the affidavit in a commonsense and realistic manner, and defer to all reasonable inferences that the magistrate could have made. *Rodriguez v. State,* 232 S.W.3d 55, 61 (Tex. Crim. App. 2007); *Jones v. State*, 338 S.W.3d 725, 733 (Tex. App.—Houston [1st Dist.] 2011), *aff'd,* 364 S.W.3d 854 (Tex. Crim. App. 2012). We consider the totality of the circumstances, including whether any tips have been corroborated by independent police work. *Gates,* 462 U.S. at 238, 241; *Rodriguez*, 232 S.W.3d at 62. Statements that are merely conclusory will not supply a substantial basis for such a decision. *Gates*, 462 U.S. at 239; *see Rodriguez*, 232 S.W.3d at 61. Rather, we must determine whether there are sufficient facts stated within

the four corners of the affidavit, coupled with inferences from those facts, to establish a "fair probability" that evidence of a particular crime will likely be found at a specified location. *Jones,* 338 S.W.3d at 733 (*citing Rodriguez,* 232 S.W.3d at 62); *Massey v. State,* 933 S.W.2d 141, 148 (Tex. Crim. App. 1996). "The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *State v. Duarte*, 389 S.W.3d 349, 354-55 (Tex. Crim. App. 2012).

Application

On June 12, 2011, Lubbock police received an anonymous tip that marijuana was located inside a Lubbock residence, and began an investigation. The next evening, Officer Cody Kidd examined the trash in the alley dumpster behind the residence. On June 14, Officer Kidd submitted an affidavit in support of a request for a search warrant to a magistrate judge. The affidavit stated in part:

> I then removed a black garbage bag from the nearest dumpster to [appellant's residence]. Inside of this black trash bag I located two articles of mail addressed to Jordan Allen at [appellant's address]. I also located an empty box that contained a $CO_2$ regulator. $CO_2$ regulators are commonly used by people growing marijuana in conjunction with $CO_2$ tanks to elevate carbon dioxide levels. Elevating carbon dioxide levels is said to increase marijuana growth speed considerably by increasing the plants ability to manufacture sugars that it uses to build plant tissues.
>
> Inside of the black trash bag I also located a document that contained the name Jordan Allen with the address of [appellant's address]. This document is an order form from a business in Canada. The items ordered appeared to be marijuana seeds. There were two entries on the form. One from Greed House Seeds with one package of "Trainwreck Fem" and one from Joey Weed with one package of "Moonshadow" ordered. I believe that these orders are for marijuana seeds.

4

I also located a white trash bag inside of the larger black trash bag. Inside the white bag were two red plastic cups. Inside of the cup were several small seeds. There were also dozens of the same type of seeds in the bottom of the white bag. From my training and experience in dealing with marijuana and marijuana grow operations I have come into contact with marijuana seeds on many occasions. I believe the seeds located in the white trash bag to be marijuana seeds. The seeds have the same size, color, and odor of marijuana seeds.

I also contacted Lubbock Power and Light who advised that the water consumption for [appellant's address] was abnormally high for the months of February, March, and April. From my training and experience I also know that marijuana that is hydroponically grown does not require soil but instead uses a root medium and large quantities of water and a water soluble fertilizer.

The affidavit also noted Officer Kidd's current assignment to the police department's Special Operations Division, and recited his extensive experience with possession and trafficking offenses.

The magistrate judge issued the requested warrant on June 14, authorizing a search of the residence for marijuana and evidence of "an indoor marijuana cultivation operation."[3] The search warrant was executed the following day, where bagged marijuana, marijuana plants, seeds and other items related to the growing of marijuana were found. Appellant was present at the home at the time the warrant was executed.

Appellant's motion to suppress contended the affidavit failed to give the magistrate a substantial basis for concluding that such contraband probably would be

---

[3] The search warrant also authorized the search for "Instruments of a continuing criminal drug distribution organization; to include but not limited to: indoor lighting equipment, water irrigation system, vents, hoses, valves, air conditioning units, scales, electronic timers, catalogs, order books, receipts, cultivation schedules, fertilizer, plant seeds, note books, ledgers, computers, computer disks, pictures, weapons, drug paraphernalia, to include mobile devices and any device capable of communicating information about narcotics transactions and any other criminal instruments used in the furtherance of an indoor marijuana cultivation operation. Also search residents of house described as a White male named Jordan Allen and any other occupants of said residence. Furthermore to search the vehicles, and all outbuildings and the curtilage hereof, and to seize the same and bring it before me."

found at his home. Officer Kidd was the only witness who testified at the suppression hearing.

Appellant's argument that the trial court erred by denying his motion to suppress focuses on aspects of the affidavit he contends should not have been considered in the probable cause determination. The State agrees that certain parts of the search warrant affidavit cannot be considered. *See Brackens v. State,* 312 S.W.3d 831, 837-38 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (when warrant issued on basis of affidavit containing tainted information, question is whether probable cause was established by remaining parts of affidavit). There is no dispute, however, that the items found in the trash behind the residence properly are considered in the probable cause analysis.

As described in the affidavit, the large trash bag contained two articles of mail addressed to appellant at that address and, most significantly, contained the order form from a Canadian business, completed with appellant's name and the residence address, and bearing entries appearing to order two packages of marijuana seeds. The large bag also contained an "empty box that contained a $CO_2$ regulator." In the small white trash bag inside the large bag, the officer found dozens of seeds Kidd believed, based on their size, color and odor, to be marijuana seeds.

The affidavit told the magistrate that Kidd, in his "training and experience in dealing with marijuana and marijuana grow operations," had contact with marijuana seeds on many occasions. *See Davis v. State,* 202 S.W.3d 149, 157-58 (Tex. Crim. App. 2006) (recommending practice of including in affidavit "officer's experience,

6

background information, and previous associations with contraband"); *Stanley v. State,* No. 02-10-00342-CR, 2011 Tex. App. LEXIS 5920, at *8-9 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op., not designated for publication) (applying and citing *Davis,* 202 S.W.3d at 157-58).

The affidavit also told the magistrate that $CO_2$ regulators are commonly used in marijuana cultivation "in conjunction with $CO_2$ tanks to elevate carbon dioxide levels. Elevating carbon dioxide levels is said to increase marijuana growth speed considerably by increasing the plants ability to manufacture sugars that it uses to build plant tissues."

In the Austin Court of Appeals' opinion in *Flores v. State,* 287 S.W.3d 307 (Tex.App.—Austin 2009, aff'd 319 S.W.3d 697 (Tex. Crim. App. 2010), the court relied on evidence of items found in household trash to establish probable cause for a search of the house. 287 S.W.3d at 316-17.[4] The focus of the Austin's court's analysis concerned the connection between the trash in the garbage container and the defendant and his residence. The analysis addressed the possibility that the incriminating material had been placed in the garbage by a neighbor or passer-by. *Id.* at 316. Here, the presence of the two pieces of mail and the order form, all bearing appellant's name and the residence address, alleviates that concern. *See State v. Coker,* 406 S.W.3d 392, 396 (Tex. App.—Dallas 2013, pet. ref'd) (article of mail

---

[4] The Austin court found that an informer's tip and related information did not give the magistrate a substantial basis for believing that contraband or evidence of drug dealing would be found at the address in question. In affirming the Austin court's judgment, the Court of Criminal Appeals held that the information from the tip, though perhaps insufficient to establish probable cause by itself, was nevertheless a circumstance the magistrate could consider in the determination of probable cause. 319 S.W.3d at 703. The Court thus did not directly address the Austin court's conclusion that the items in the trash were sufficient to establish probable cause. We do not read the Court of Criminal Appeals' opinion, however, to express disagreement with the Austin court's analysis of the inferences to be drawn from the items in the trash, and do not consider that the higher court's opinion diminishes the viability of the Austin court's analysis.

addressed to defendant at target residence "provided a direct link between the drugs in [defendant's] trash and [his] house"). The focus of our analysis instead must be on the strength of the inferences reasonably drawn from the presence of the items found in the trash to show the probable presence of evidence at the residence of a marijuana cultivation operation. *See Coker,* 406 S.W.3d at 397-98 (evaluating inferences from contents of trash; surveying cases); *see also Waddle v. State,* No. 14-06-00087-CR, 2007 Tex. App. LEXIS 809, at *19-20 (Tex. App.—Houston [14th Dist.] Jan. 30, 2007, no pet.) (mem. op., not designated for publication); *Rose v. State,* No. 04-04-00344-CR, 2005 Tex. App. LEXIS 32 (Tex. App.—San Antonio Jan. 5, 2005, no pet.) (mem. op., not designated for publication).

Appellant argues the only reasonable inference to be drawn from the presence in the trash of the completed order form is that the form was not submitted to the merchant. The State responds the magistrate also reasonably could have inferred the order form was submitted and was returned to appellant with his order of seeds. We agree with the State, and further find the incriminating inference supported by the presence of dozens of seeds credibly identified in the affidavit as marijuana seeds.

Reading the affidavit in a commonsense manner, the magistrate could have learned that in the trash also was an empty box that, by its appearance, indicated it formerly held a $CO_2$ regulator.

The affidavit also reported the information its affiant received from Lubbock Power & Light ("LP&L") that the residence's water consumption was "abnormally high for the months of February, March, and April" prior to the affidavit's date of June 14, and

8

reported the officer's experience that growing marijuana hydroponically requires "large quantities of water and a water soluble fertilizer."

Appellant argues a statement that water consumption is "abnormally high" is a mere conclusion. He points out the affidavit contains no factual support describing whether the consumption in those months was high compared with other months at that residence, compared with the same months at other residences, or by some other measure. He also points out the affidavit does not identify the person at LP&L who provided the information, or even the department in which the person worked. We think the absence from the affidavit of the details appellant mentions does not disqualify the water consumption statement, attributed by the affiant to the city water utility, from consideration in the probable cause analysis. We do not place requirements of "elaborate specificity" on warrant affidavits. *See State v. Jordan*, 342 S.W.3d 565, 569 n.8 (Tex. Crim. App. 2011) (citations omitted). A reading of the affidavit like that suggested by appellant, who argues the source of the information from LP&L may have been a janitor, is not the commonsense and realistic reading we must give a warrant affidavit. *Rodriguez*, 232 S.W.3d at 61; *Gates*, 462 U.S. at 238 (task of magistrate includes evaluation of "'basis of knowledge' of persons supplying hearsay information").

We conclude the combined logical force of the facts stated in the affidavit gave the magistrate a substantial basis for concluding probable cause existed, and thus for issuance of the warrant. The magistrate readily could have inferred that the marijuana seeds were ordered for the purpose of cultivation. The presence in the same trash bag of the order form and some seeds, along with the regulator box, combined with the information regarding the common use of $CO_2$ in marijuana cultivation, presented

9

circumstances permitting a conclusion there was a fair probability evidence of marijuana cultivation was to be found. That the order form bore appellant's name and the residence address linked that inference of cultivation with appellant. And the information the residence had experienced abnormally high water usage in preceding months, combined with the information regarding water requirements for hydroponic cultivation, provided an additional circumstance suggesting the residence as the probable location of the evidence. We resolve appellant's first issue against him.

Appellant's second and third issues both are derived from the hearing on appellant's *Franks* motion. *See Franks,* 438 U.S. 154. Under *Franks*, a defendant bears the burden of showing by a preponderance of the evidence that a warrant affidavit contains a false statement made either knowingly and intentionally or with reckless disregard for the truth. *Franks*, 438 U.S. at 155. The false statement must be material; that is, without it, the affidavit would not be sufficient to establish probable cause for issuance of the warrant. *Id.*

The search warrant affidavit included information about the anonymous tip that caused the police to begin investigating possible marijuana cultivation at appellant's residence. At the hearing on his *Franks* motion, appellant wanted to testify but ultimately did not, after the court agreed with the State about the extent to which appellant could be cross examined on matters relevant to the *Franks* motion. On appeal, by his second issue, appellant characterizes the events as a refusal by the trial court to allow him to testify at the *Franks* hearing, and contends the trial court erred by doing so. We need not address this issue because the testimony appellant wanted to give at the hearing would tend to counter the affidavit's statement of the information

provided by the anonymous tipster. We have not relied on the tipster's statement in our evaluation of probable cause for issuance of the warrant. Under *Franks,* a false statement in the affidavit "must have been necessary to the finding of probable cause, in order to render the warrant invalid." *Dancy v. State,* 728 S.W.2d 772, 782 (Tex. Crim. App. 1987) (*citing Franks*, 438 U.S. at 155-56). Appellant's second issue is overruled.

By his third issue, appellant argues Kidd's search warrant affidavit contained materially false information and omitted material information in reckless disregard for the truth, and that with the exclusion of the false and inclusion of the "proper" information, probable cause would not have existed for issuance of the search warrant. *See Franks,* 438 U.S. at 155-56. With two exceptions, however, we have not relied on the statements in the affidavit to which appellant objects, either through misstatement or omission. The first exception is appellant's argument that Officer Kidd acted with reckless disregard for the truth by omitting information about the order form; that is "that the form he found in the trash was handwritten and wadded up (like it had never been sent) as opposed to typed, like a receipt returned with an order." The entries referred to as handwritten are those containing appellant's name and address and those describing the items ordered. We have relied on the affidavit's statements regarding the order form in our analysis of probable cause, and so will address appellant's challenge to that aspect of the affidavit.

As we have noted in our discussion of appellant's first issue, he sees the fact the order form was completed by hand as significant because, he argues, it indicates the form was not submitted. In the same discussion, we have expressed our disagreement with the argument. Because we do not agree its handwritten entries carry the

11

significance appellant sees, we also cannot agree the omission of that fact from the affidavit affected its sufficiency to establish probable cause. *See Renteria v. State*, 206 S.W.3d 689, 704 (Tex. Crim. App. 2006) (assuming *Franks* applies to omissions from an affidavit; similarly finding magistrate would have had probable cause to issue warrant even with inclusion of omitted facts); *Wise v. State*, 223 S.W.3d 548, 557 (Tex. App.—Amarillo, 2007, pet. ref'd) (same). As to the assertion the officer acted with reckless disregard for the truth by omitting the fact the order form was "wadded up," we note simply that the record does not show when its crumpling occurred.[5] If, as the State posits, the order form was returned with the order of seeds, it may have been crumpled as it was thrown in the trash. We can see no significance to the affidavit's omission of discussion of the form's crumpled condition.

Secondly, we have relied to a degree on the affidavit's information from LP&L regarding water consumption at the residence, so will address appellant's argument that Officer Kidd acted in reckless disregard of the truth by omitting from his affidavit the fact appellant's residence had an above-ground swimming pool in its back yard. The presence of the pool, appellant argues, provides a ready explanation for increased water consumption, negating the reported high water usage as a factor toward probable cause. In its conclusions of law supporting its denial of *Franks* relief, the trial court rejected the contention, pointing out that officer Kidd testified at the suppression hearing he was aware of the existence of the pool, but did not say he was aware of its existence before he signed the warrant affidavit. We agree with that assessment of the testimony.

---

[5] From its depiction in the record, the single-page order form is generally legible but appears somewhat crumpled. No testimony was taken at the *Franks* hearing. Appellant made an offer of proof through statements by counsel, but the offer sheds no light toward a determination how or when the form became crumpled.

And appellant's offer of proof at the *Franks* hearing did not include an assertion the officer was aware of the pool when he signed the affidavit. The record thus does not demonstrate appellant met his burden of showing, by a preponderance of the evidence, a material omission regarding the swimming pool. Appellant's third issue is overruled.

## Conclusion

Having resolved each of appellant's issues against him, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.