

# NUMBER 13-17-00181-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| THE STATE OF TEXAS, | Appellant, |
|---|---|

v.

| RAMIRO GARCIA LOPEZ JR., | Appellee. |
|---|---|

**On appeal from the 430th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION ON REHEARING
**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Benavides**

We issued our original memorandum opinion in this case on August 9, 2018. *See State v. Lopez*, 13-17-00181-CR, 2018 WL 3764145, at *1 (Tex. App.—Corpus Christi Aug. 9, 2018, no pet. h.) (mem. op., not designated for publication). Appellee, Ramiro Garcia Lopez Jr. has filed a motion for rehearing and a motion for rehearing en banc. *See* TEX. R. APP. P. 49.1. We deny the motion for rehearing and the motion for

rehearing en banc but withdraw our prior memorandum opinion and judgment and substitute the following memorandum opinion and accompanying judgment in their place.

Appellant the State of Texas challenged the trial court's order granting Ramiro Garcia Lopez Jr.'s motion to suppress. In its single issue, the State argued that the trial court applied the wrong legal standard in assessing the sufficiency of the warrant. By one sub-issue the State argued that collateral estoppel did not preclude the trial court's consideration of the motion to suppress in this proceeding. We reverse and remand.

## I. BACKGROUND

Gilberto Garces was found dead in a rural area of Mercedes of apparent gunshot wounds around 7:30 p.m. on April 6, 2016. His hands were bound with electrical wire.[1]

We summarize the facts set out in the affidavit in support of the search warrant because they are necessary to our analysis of the State's issue on appeal. Garces's family members told the investigating officers that Garces told them he planned to go to the tire shop that afternoon "to get some money from a friend." Family members described the tire shop Garces referred to as a yellow building on the east side of FM 491 on Expressway 83 owned by the Lopez brothers, Ramiro Lopez, Jr. and Pedro Luis Lopez. One of the family members spoke to Garces at 3:13 the afternoon of his death. Calls to Garces later that day went unanswered. Garces's body was discovered dead in a ditch at 7:30 p.m. that same day.

According to the affidavit, Mid-Valley Tire Shop (Mid-Valley) was owned or

---

[1] These facts come from the testimony of Hidalgo County Sheriff's Investigator Javier Vargas at the hearing on the motion to suppress.

controlled by one or more of the following persons, "Owner, Ramiro Ramirez, Pedro Luis Lopez, Ramiro Lopez Jr., [and] any and all other parties unknown to affiant." Sheriff's department investigators "learned that Pedro Luis Lopez and another male named Francisco Javier Alaniz had previously assaulted the decedent on November 10, 2015. (Case# 15-45334)." Garces's family members advised the Sheriff's investigators that he was seen at Mid-Valley on "November 6, 2016." Sheriff's investigators "utilized alternative investigative tools which placed the decedent's phone in the area of the tire shop at approximately 3:27 p.m." Investigators ran checks on "Gilberto Garces, Francisco Javier Alaniz, Pedro Luis Lopez and Ramiro Lopez Jr., all of whom have previous arrests for narcotics." The officer affiant believed that "due to the nature and history of all parties possibly involved and the nature of said murder that narcotics and or U.S. Currency may be involved."

A search warrant was issued April 8, 2016, for Mid-Valley Tire Shop seeking:

any and all firearms, any and all unknown make and caliber ammunition and/or spent casings, projectiles, and/or shrapnel, any and all make or model magazines, clips or firearm loading devices, any and all firearm attachments and/or accessories, any and all blood stains; any and all blood stained clothing, fabrics and/or articles, DNA swabs, any and all articles used to restrain an individual including electrical wire, any electronic device missing its electrical wire, any and all records, writings, paper documents and/or photographs identifying the suspect(s) and/or victim(s), any and all cellular telephones, to include electronic recording devices and photographs; any illegal drug or paraphernalia, any and all scales, any and all packaging material, U.S. Currency and financial instruments which are used to promote illegal activities which relate to the illegal and illicit trafficking of marihuana and other controlled substances in violation of the Texas Health and Safety Code and violation of the laws of the State of Texas, Texas Penal Code.

The magistrate judge issued the warrant based upon its supporting affidavit.[2]  *See* Tex. Code Crim. Proc. Ann. arts. 2.09, 2.10 (West, Westlaw through 20171st C.S.).  The warrant was executed at Mid-Valley the same day.

### A.     Probation Revocation

At the time of Garces's death, Lopez was on probation for a marijuana possession conviction.  *See* Tex. Health & Safety Code Ann. § 481.121(b)(5) (West, Westlaw through 2017 1st C.S.).  When officers searched the office at Mid-Valley, they discovered a firearm in a desk.  Lopez was arrested for the probation violation of felon in possession of a firearm.  The State filed a motion to revoke, and the defense sought to suppress the firearm and any statements by Lopez after his arrest.

The trial court held a hearing on May 11, 2016 and considered the motion to suppress.  After the hearing, the trial court found that the warrant was not supported by probable cause and dismissed the motion to revoke.[3]  The motion to suppress in the revocation case is not before us; however, the parties agreed that the trial court could use the record from the revocation proceeding in the later murder proceeding that is the subject of this opinion.

### B.     Capital Murder Case

Lopez was indicted on June 1, 2016 for the intentional killing of Garces by shooting him while in the course of committing or attempting to kidnap Garces.  Tex. Penal Code Ann. § 19.03 (West, Westlaw through 2017 1st C.S.).  In the capital murder case,

---

[2] The Honorable Noe Gonzalez, district judge of the 370th District Court in Hidalgo County, issued the search warrant.

[3] Subsequently, the trial court signed an order granting the motion to suppress.

4

defense counsel filed a motion to suppress the fruits of the same search that was the subject of the suppression motion in the revocation proceeding and any statements by Lopez. The motion argued that the affidavit in support of the search warrant described above did not support the magistrate's determination of probable cause. The trial court considered the motion to suppress on February 9, 2017, and again suppressed the evidence based upon a lack of probable cause. The trial court later filed Findings of Fact and Conclusions of Law and Additional Findings of Fact. We discuss the most relevant of them below.

## II.   COLLATERAL ESTOPPEL

Lopez's motion for rehearing argued that the Court failed to address the issue of collateral estoppel which was raised by the parties. Lopez argued that the State was collaterally estopped from challenging the trial court's order suppressing the evidence in the murder case because the trial court had already decided the issue against the State in the revocation proceeding. The State argued in response that the ruling in the revocation case did not collaterally estop the State in the murder case. A trial court's decision whether to apply collateral estoppel is a question of law, applied to the facts, that we review *de novo*. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007).

During the murder case suppression proceedings, Lopez argued application of collateral estoppel which the State opposed. The trial court's order granting the motion to suppress did not address collateral estoppel but was based upon a lack of probable cause. The trial court made no findings of fact or conclusions of law on the issue of collateral estoppel.

5

The doctrine of collateral estoppel is embodied within the Fifth Amendment's guarantee against double jeopardy. *Ashe v. Swenson*, 397 U.S. 436, 445 (1970). "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *State v. Getman*, 255 S.W.3d 381, 384 (Tex. App.—Austin 2008, no pet.) (quoting *Ashe*, 397 U.S. at 443); *see Stevens*, 235 S.W.3d at 740.

> To determine whether collateral estoppel bars a subsequent prosecution . . . courts employ a two-step analysis. Courts must determine:
>
>> (1) exactly what facts were "necessarily decided" in the first proceeding; and
>>
>> (2) whether those "necessarily decided" facts constitute essential elements of the offense in the second trial.

*Ex parte Taylor*, 101 S.W.3d 434, 440 (Tex. Crim. App. 2002);[4] *see also Ex parte Bolivar*, 386 S.W.3d 338, 344 (Tex. App.—Corpus Christi 2012, no pet.).

"[A] probation revocation hearing can give rise to collateral estoppel. *See Ex parte Tarver*, 725 S.W.2d 195 (Tex. Crim. App. 1986) (holding that a finding in a revocation proceeding that defendant did not commit assault precluded a subsequent prosecution for crime of assault). However, in *York v. State*, the court of criminal appeals held that "the State is not barred by the Double Jeopardy Clause from relitigating a suppression issue that was not an ultimate fact in the first prosecution and was not an ultimate fact in the second prosecution." 342 S.W.3d 528, 552 (Tex. Crim. App. 2011).

---

[4] In a subsequent case, the court of criminal appeals characterized the omitted portion of the sentence as dicta. *York v. State*, 342 S.W.3d 528, 541 (Tex. Crim. App. 2011).

6

The ultimate fact in the revocation proceeding[5] was whether Lopez violated the terms of his deferred adjudication probation, an issue the trial court never reached. The ultimate fact in the later murder prosecution was whether Lopez killed Garces while acting with the requisite intent,[6] an issue the trial court did not reach. Thus, collateral estoppel did not apply because the trial court's finding of no probable cause was not an ultimate fact in either case. *Id.* We sustain the State's sub-issue that collateral estoppel did not bar the trial court from considering the motion to suppress in the murder prosecution.

### III. MOTION TO SUPPRESS

The State's challenged the trial court's February 9, 2017, ruling granting the motion to suppress on the ground that the trial court applied the wrong legal standard.

### A. Standard of Review

"Appellate courts review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law." *State v. Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015). Both appellate and trial courts are required to "give great deference to a magistrate's determination of probable cause." *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)); *see also Cuevas v. State*, No. 13-11-00111-CR, 2012 WL 3134325, at *5 (Tex. App.—Corpus Christi Aug. 2, 2012, no pet.)

---

[5] "The State must prove by a preponderance of the evidence that the person on community supervision violated the terms and conditions of his community supervision." *Akbar v. State*, 190 S.W.3d 119, 122 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *see Scamardo v. State*, 517 S.W.2d 293, 297 (Tex. Crim. App. 1974).

[6] *See Martin v. State*, 246 S.W.3d 246, 261 (Tex. App.—Houston [1st Dist.] 2007, no pet.) ("A person commits capital murder if she intentionally or knowingly causes the death of an individual under six years of age. TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(8).").

7

(mem. op., not designated for publication). Courts should interpret the search warrant affidavit in a common sense and realistic manner, drawing reasonable inferences from the information, and an appellate court should not invalidate a warrant by interpreting the affidavit in a hyper-technical manner. *Le*, 463 S.W.3d at 877. "Probable cause exists if, under the totality of the circumstances, there is fair probability that contraband or evidence of a crime will be found at a specified location." *Id.*; *Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007). A reviewing court is generally limited to the four corners of the affidavit to determine probable cause. *Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013); *see also State v. Ozuna*, No. 13-16-00364-CR, 2018 WL 2057274, at *7 (Tex. App.—Corpus Christi May 3, 2018, no pet.) (mem. op., not designated for publication).

### B. The Search Warrant

Defense counsel challenged both probable cause and the breadth of the search warrant during the revocation proceedings. During the hearing, Hidalgo County Sheriff's Investigator Javier Vargas testified that the November 6, 2016 date in the affidavit was a typographical error and should have read April 6, 2016, the day of Garces's death and two days before the warrant affidavit was prepared.[7] Investigator Vargas also testified that the investigators confirmed information from Garces's family that Garces had gone to Mid-Valley approximately four hours before his body was found. In addition, investigators found a police report that reflected that persons named as suspects had

---

[7] Although a reviewing court is generally limited to the four corners of an affidavit, the State may offer testimony to correct technical discrepancies in the affidavit. *Green v. State*, 799 S.W.2d 756, 759 (Tex. Crim. App. 1990); *Castalan v. State*, 54 S.W.3d 469, 477 (Tex. App.—Corpus Christi 2001, no pet.).

assaulted Garces in November 2015, six months' earlier.[8]  Garces and the named suspects had arrest records for illegal drugs.

Defense counsel argued that the unidentified family members were unknown and untested informants whose information was not shown to be reliable, that the November 6, 2016 date was impossible, and there was no reason to believe that Garces was killed at Mid-Valley.  The State argued that typographical errors do not invalidate a search warrant.  The State also argued that Garces's family members were more akin to citizen informers than unknown tipsters, the investigators confirmed much of the information from the family, Garces's last known location alive was at Mid-Valley, and Garces was assaulted by some of the named suspects six months earlier so that there was reason to believe that the evidence sought would be found at Mid-Valley.

In the revocation proceeding, the trial court orally ruled that the warrant was too general.  The trial court later issued twenty-seven conclusions of law and twenty-nine findings of fact some of which pertain exclusively to the motion to revoke, the rest relate to the motion to suppress in both proceedings.  The trial court's findings of fact related to the murder case included the following:

> 26.    The information provided to Affiant by "family members" was not reliable for the following reasons: a) did not provide the basis of their knowledge; b) Affiant did no independent investigation to corroborate the details provided; c) did not relate to Affiant any information to support their credibility including 1) length of residence in the community; 2) relationship to deceased; 3) good general character by lack of criminal record or arrest; 4) gainful employment history; 5) reputation for truth or veracity; or 6) names of the family members.
>
> 27.    The magistrate was presented with anonymous/unnamed sources

_____

[8]  The search warrant referenced the police case number but did not explicitly state that the number was to a police report.

without any evidence of their reliability and credibility. (Related to CL 10 and 11)

28. The information that "alternate investigative tools" placed the deceased's phone in the area of the tire shop at approximately 3:27 p.m. does not contain a date for an independent assessment of probable cause. (Related to CL 4, 5, 6).

29. The "alternative investigative tools" are unknown and not shown to be reliable. (Related to CL 10 and 15)

The trial court's conclusions of law included the following:

6. The four corners of the search warrant affidavit did not provide a substantial basis for issuing the warrant. The test is whether a reasonable reading of the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant. *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006). (Related to FF25)

7. There was no fair probability that evidence of a crime would be found at the location authorized by the search warrant. Probable cause exists when under the totality of the circumstances, there is a "fair probability" that contraband or evidence of a crime will be found at the specified location. *Duarte v. State*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012).[9] (Related to FF25)

8. Tips obtained from "anonymous or first-time confidential informants of unknown reliability must be coupled with facts from which an inference may be drawn that the informant is credible or that his information is reliable." *State v. Duarte*, 389 S.W.3d 349, 357 (Tex. Crim. App. 2012). (Related to FF25)

9. The requirement in CL 8 does not apply to information from citizens who freely share the information with police without withholding their names. *West v. State*, 720 S.W.2d 511, 513 n.2 (Tex. Crim. App. 1986) ("We decline the invitation to view with the same suspicion usually reserved for anonymous police informants with an unproven record of reliability information given by citizens who report a crime then freely share what information they have with police without withholding their own names."). However, here neither the family members nor the friends and their relationship to the victim were named for the magistrate to give the

---

[9] Because this is a quotation from the trial court's conclusions of law, *Duarte v. State,* is cited as it was by the trial court. *See* 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). The trial court cited the case correctly in Finding of Fact 8.

appropriate weight to their statements. Conclusory statements are insufficient. (Related to FF25)

11. The information from "family members" of unknown reliability was not coupled with facts from which an inference may be drawn that they are credible or that their information is reliable. *State v. Coker*, 406 S.W.3d 392, 396 (Tex. App.—Dallas 2013, pet. ref'd). (Related to FF25)

12. Even if the information from alleged family members were treated as reliable, probable cause for the issuance of the search warrant is still lacking. The four corners of the affidavit do not provide a substantial basis for issuing the warrant. Under the totality of the circumstances, there was not a fair probability that contraband or evidence of a crime would be found at the tire shop. *State v. Duarte,* 389 S.W.3d 349, 384 (Tex. Crim. App. 2012)

13. The Search Warrant Affidavit concludes that, Garces was said to be going to the tire shop to get money from a friend and was later found dead. This was a search warrant for the last place Garces may have been to meet a friend before being found feet away from a vehicle in an open field in Mercedes, Texas. This is *insufficient* under the law and provides a general exploratory warrant. (*Andres[e]n v. Maryland*, 427 U.S. 463 (1976)

(Emphasis in original).

## C.    Analysis

The trial court was clearly troubled by the officer's reliance on the unidentified family members. Although the trial court recognized that courts treat the reliability of information from citizen informers differently than first-time confidential informants, the court rejected the information provided by the unidentified family members because the affidavit did not provide the basis of their knowledge. The trial court further rejected the information from the family because there were no details given about the family members such as their: "1) length of residence in the community; 2) relationship to the deceased; 3) good general character by lack of criminal record or arrest; 4) gainful employment history; 5) reputation for truth and veracity; or 6) names of the family members." The trial

court found there was no investigation that corroborated any of the information from the family members, but the finding was contradicted by the testimony of Investigator Vargas and the affidavit.

In *State v. Coker*, cited by the trial court, a police officer received an anonymous letter from a citizen that Coker was manufacturing methamphetamine at his residence. 406 S.W.3d 392, 394 (Tex. App.—Dallas 2013, pet ref'd). The anonymous citizen's complaint was based on his conversations with others who had seen the lab and who associated with the defendant. *Id.* The officer corroborated that the defendant lived at the reported address. The officer also collected the defendant's trash which included empty containers of chemicals used to manufacture methamphetamine and determined there was methamphetamine residue in the trash by laboratory testing. *Id.* at 395. The officer then obtained a search warrant for the premises which confirmed that Coker was manufacturing methamphetamine. *Id.* The trial court granted a defense motion to suppress after finding that there was no probable cause. *Id.* Coker argued that the unknown citizen's complaint was insufficient even when combined with the trash search to qualify as probable cause. *Id.* The Dallas Court held that the magistrate was entitled to rely on information provided by the anonymous private citizen which provided a direct link between the trash search and the defendant. *Id.* at 396. *Illinois v. Gates* further established that an anonymous citizen complaint, if corroborated in part, may form a legitimate basis for issuance of a search warrant. 462 U.S. 213, 243–45 (1983); *see also Le*, 463 S.W.3d at 876 (holding that the court of appeals properly considered the anonymous citizen information supporting the affidavit.).

12

In *State v. Duarte*, the court of criminal appeals further recognized that "[c]itizen informants are considered inherently reliable; confidential informants are not." 389 S.W.3d 349, 357 (Tex. Crim. App. 2012).[10]  In *Duarte*, the issue was the reliability of a first-time criminal informant whose hearsay information was not corroborated by police investigation.  *Id.*  The trial court in *Duarte* granted the motion to suppress which decision was affirmed by the Court of Criminal Appeals.  *Id.* at 353, 360.

The trial court disregarded the affidavit's statement that Garces was seen at Mid-Valley the afternoon of his death based upon the typographical error in the affidavit that stated he was seen there on November 6, 2016, a date that had not yet occurred.  In Finding of Fact 25(e), the trial court recognized that the date was seven months after Garces died, but the trial court disregarded the State's explanation that the date was a typographical error.  Typographical errors that are explained at a suppression hearing do not automatically invalidate a search warrant.  *See Green v. State*, 799 S.W.2d 756, 761 (Tex. Crim. App. 1990); *Lyons v. State*, 503 S.W.2d 254, 255 (Tex. Crim. App. 1973).[11]

The trial court further found that the "alternate investigative tools" that placed Garces's phone in the area of the tire shop at 3:27 p.m. did "not contain a date for

---

[10]  As long ago as 1939, Texas courts recognized the inherent reliability of citizen informants.  *See Hall v. State*, 136 Tex. Crim. 320, 321, 125 S.W.2d 293, 295 (1939).  The search warrant in that case was supported by an affidavit issued based upon the reports of unnamed citizens.  *Id.*; *see also Wybie v. State*, 140 Tex. Crim. 123, 125, 147 S.W.2d 243, 244 (1940) (same).

[11]  *Champion v. State*, 919 S.W.2d 816, 818 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) ("Technical discrepancies in dates or times do not automatically invalidate a search warrant."); *Olivarri v. State*, 838 S.W.2d 902, 905 (Tex. App.—Corpus Christi 1992, no pet.); *Schornick v. State*, 02-10-00183-CR, 2010 WL 4570047, at *3 (Tex. App.—Fort Worth Nov. 4, 2010, no pet.) (mem. op., not designated for publication).

independent assessment of probable cause" and the "'alternate investigative tools' are unknown and not shown to be reliable." However, the magistrate judge could readily have inferred that investigators obtained Garces's cell phone data sometime between 7:30 p.m. on April 6, 2016, when his body was found, and the afternoon of April 8, 2016, the date on which the search warrant application was prepared.[12] Requiring the date of investigation be shown under these circumstances is the sort of hyper-technical reading that is prohibited. *See State v. McClain*, 337 S.W.3d 268, 273 (Tex. Crim. App. 2011) ("The court of appeals violated the prohibition on 'hypertechnical' review of a warrant affidavit when it strictly applied rules of grammar and syntax in its analysis. Further, the court of appeals reviewed the affidavit by focusing on what the officer 'implied' rather than on what the magistrate could have reasonably inferred.")

Moreover, the trial court's criticism that the affidavit failed to spell out the investigative tools used and prove them to be reliable to obtain a search warrant is not the "common-sense" reading of the affidavit required. *See Gates*, 462 U.S. at 235–36; *State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, not pet.) ("Judicial review of the decision to issue a search warrant must take into account that many warrants are issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than that used in formal legal proceedings."). In *Bradley*, the trial court found the affidavit did not support probable cause, but after applying the required deference and common-sense approach to the totality of the circumstances, the court of appeals reversed and remanded. 966 S.W.2d at 873, 876.

---

[12] The affidavit's jurat shows that it was signed on April 8, 2016, at 1:50 p.m.

14

In summary, the magistrate judge had before him the following facts as outlined in the affidavit: unidentified citizen family members, who were interviewed by the police officer, although not named in the affidavit, who provided information regarding Garces's intent to visit Mid-Valley on the afternoon of his death. One of them reported that he/she last spoke to Garces at 3:13 p.m., and later calls to him went unanswered. Garces was seen at Mid-Valley the afternoon of his death. Police investigation confirmed the location of Garces's cell phone "in the area" of Mid-Valley at 3:27 p.m. and confirmed a relationship between the owner of the tire shop and his associates (named in the warrant) with Garces through a previous altercation. The officer further determined that Garces and the suspected persons were all previously arrested for narcotics violations. Garces was found dead four hours after he was at the tire shop.

Although the trial court noted that more information could have been included in the warrant, "[t]he focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *Duarte*, 389 S.W.3d at 354–55.

Considering the totality of the circumstances, the magistrate had a substantial basis to believe that evidence related to Garces's murder would be found at the tire shop. Further considering the extreme deference required to the magistrate judge's finding of probable cause, *see Le*, 463 S.W.3d at 876, the trial court erred by not affording the magistrate's finding of probable cause the deference required by the case law. We sustain the State's sole issue on appeal.

15

## IV.  CONCLUSION

We reverse the order of the trial court suppressing evidence and remand for proceedings consistent with this opinion.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
11th day of October, 2018.

16