In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-21-00168-CR
NO. 09-21-00169-CR
NO. 09-21-00170-CR
_____

**LAWRENCE ISERAL HUBERT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 253rd District Court**
**Liberty County, Texas**
**Trial Cause Nos. CR34877, CR34892CT1 and CR34892CT2**

**MEMORANDUM OPINION**

A jury convicted appellant Lawrence Iseral Hubert of evading arrest or detention with a previous conviction and of two charges of unlawful possession of a firearm by a felon. In four issues on appeal, Hubert challenges the sufficiency of the evidence, admission of evidence, and the trial court's decision to grant two of the State's challenges for cause. We affirm the trial court's judgments.

1

## THE EVIDENCE

K.A.[1] testified that she called 9-1-1 because her neighbor, Hubert, pointed a gun at her and her friends while they were sitting in her grandmother's backyard. K.A. described the gun as black, automatic and bigger than a handgun. K.A. testified that the gun she saw Hubert holding matched the photographs of the guns depicted in State's Exhibits 9 and 13, which was later identified as the Kel-Tec SUB2000 9-millimeter carbine.

Lieutenant Michael Shane Burleigh of the Dayton Police Department testified that he was called out to assist with a possible barricaded subject, and when he arrived, patrol officers had a perimeter set up around Hubert's house and were searching for Hubert. Burleigh explained that the call indicated that weapons may have been involved. Burleigh testified that Hubert's car was at his house, but they did not locate Hubert. Burleigh explained that a warrant was issued for Hubert's arrest and Sergeant Brian Chowns was the affiant, and when the police located Hubert the next day, Hubert ran. Burleigh testified that when he arrived at the scene, Hubert had already been arrested based on the warrant, and Burleigh located a Springfield Armory XD black handgun in the grass a couple hundred yards from

---

[1]To protect the privacy of the State's witnesses who testified at Hubert's trial, we identify them by their initials. *See* Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process").

Hubert's house. Burleigh also recovered a white cloth bag that appeared to be a pillowcase with a Kel-Tec SUB2000 9-millimieter carbine which "folds out into a larger legal size rifle." According to Burleigh, Hubert did not live on the plot of land where he recovered the Springfield Armory XD handgun and the Kel-Tec 9-millimeter.

Chowns of the Dayton Police Department explained that he was called out due to a suspicious subject that he determined was Hubert, and after receiving information from K.A. and two others, Chowns started an investigation for a felon in possession of a firearm. Chowns testified that he applied to get an arrest warrant for Hubert and that the affidavit contains his signature, and based on the arrest warrant, officers arrested Hubert the next day with firearms in his possession.

Hubert's counsel complained that Hubert's arrest was unlawful, and the warrant was invalid because Chowns's affidavit supporting the warrant was insufficient because it failed to provide the magistrate with information regarding the witnesses' credibility and reliability. Hubert's counsel argued the evidence obtained due to Hubert's arrest is inadmissible.

The trial court admitted the Warrant of Arrest for Hubert for the offense of possession of a firearm by a felon and a copy of Chowns's probable cause affidavit. In his affidavit, Chowns averred that the complainant contacted the police after Hubert pointed a weapon at the complainant, and four witnesses to the incident all

3

advised they observed Hubert with an assault style rifle and a pistol. Chowns further averred that Hubert's criminal history revealed felony convictions for aggravated assault against a public servant, evading arrest or detention with a vehicle, and possession of a controlled substance. The trial court found that the affidavit was sufficient because it was based on four witnesses and the complainant's 9-1-1 call.

Trooper Christopher Richmond of the Texas Department of Public Safety testified that when he assisted with the arrest warrant, he observed Hubert carrying a white bag, which appeared to be a pillowcase. Richmond testified that when Hubert spotted him in his marked patrol unit, Hubert changed directions and ran. The trial court admitted a video taken from Richmond's body camera showing Richmond running after Hubert and the recovery of the white bag Hubert was carrying. Richmond testified that the white bag contained a firearm that was "some type of machine rifle mechanism." Richmond explained they also recovered a Springfield XD 40-caliber handgun at the scene. The video shows that the Springfield XD 40-caliber handgun was found in plain view in the grass a few feet from the white pillowcase. The video also shows another Trooper stating that Hubert had the Springfield XD 40-caliber handgun in his hand when he was running.

Investigator Ivan Pearce of the Liberty County District Attorney's Office testified that he is an expert in examining inked fingerprints. Pearce testified that he obtained a fingerprint card from Hubert, compared the inked fingerprints on the card

to the fingerprints on State's Exhibit 16, a judgment of conviction for the state jail felony offense of possession of a controlled substance, and determined Hubert's fingerprints matched the fingerprints on State's Exhibit 16. Pearce also testified that Hubert's fingerprints matched the fingerprints on State's Exhibit 18, a judgment of conviction for evading arrest or detention with a vehicle, a state jail felony. Pearce explained other identifying information linked Hubert to State's Exhibits 16 and 18.

Sergeant Eric Ibarra of the Dayton Police Department testified that his dash camera on his marked patrol vehicle captured his attempt to apprehend Hubert because there was a warrant for his arrest. Ibarra explained that he observed Hubert carrying either a towel or pillowcase. Ibarra testified that he was in full uniform and had activated his lights and sirens when Hubert ran, and after he and other agencies searched for over an hour, Hubert was arrested. Ibarra testified that he collected evidence at the scene of Hubert's arrest, which included the white pillowcase Ibarra observed in Hubert's hand, magazines, the Springfield Armory XD 40-caliber handgun, the Kel-Tec 9-millimeter, ammunition, and marijuana. Ibarra also explained that Hubert was not arrested at his house, and Hubert did not live at the location where he was arrested.

At the close of the State's evidence, Hubert's counsel reurged the trial court to find that Chowns's affidavit supporting the warrant was insufficient and to instruct the jury to disregard all evidence obtained due to the warrant. The trial court

reiterated that it found the arrest warrant sufficient, and the trial court noted that prior to being arrested on the warrant, Hubert committed the three felony offenses at issue in the officers' presence before any arrest or detention was effectuated. The trial court denied Hubert's motion for a directed verdict in all three cases.

The jury found Hubert guilty of evading arrest or detention with a previous conviction and of two charges of unlawful possession of a firearm by a felon. The trial court conducted a punishment hearing, during which the jury heard evidence of Hubert's prior felony convictions for aggravated assault on a public servant, aggravated robbery, and possession of a controlled substance. In trial cause number CR34877, the jury found the habitual paragraph in the indictment to be true and assessed punishment at two years of confinement for evading arrest or detention with a previous conviction. In trial cause numbers CR34892CT1 and CR34892CT2, the jury found enhancement allegations A and B and habitual allegation C to be true and assessed punishment at thirty years of confinement for each count of unlawful possession of a firearm by a felon.

## ANALYSIS

## ADMISSION OF EVIDENCE

In issue one, Hubert complains that the trial court erred by admitting the firearms seized upon his arrest because Chowns's affidavit supporting the arrest

6

warrant was insufficient to establish probable cause.[2] According to Hubert, Chowns's affidavit was insufficient because it failed to name the informants or establish their credibility and the reliability of their information. Hubert argues Chowns's affidavit only provided unsupported, conclusory statements that failed to provide the magistrate with sufficient information to support an independent judgment that probable cause existed and there was no basis established at trial for a lawful warrantless arrest.

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *See Walters v. State*, 247 S.W.3d 204, 217 (Tex. Crim. App. 2007). A trial court abuses its discretion when its decision lies "outside the zone of reasonable disagreement." *See id*. (quoting *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005)). "An arrest warrant affidavit must provide the magistrate with 'sufficient information to support an independent determination that probable cause exists to believe that probable cause exists for the warrant.'" *McFarland v. State*, 928 S.W.2d 482, 509 (Tex. Crim. App. 1996), *abrogated on other grounds by Mosley v. State*, 983 S.W.2d 249, 263 n.18 (Tex. Crim. App. 1998); *see also State v.*

---

[2]Ordinarily, we would address issues three and four first because, if sustained, they would result in rendition of a judgment of acquittal. *See Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also* Tex. R. App. P. 47.1. However, we will address issue one first because Hubert argues that we must not consider evidence of the firearms seized upon his arrest because Chowns's affidavit supporting the arrest warrant was insufficient to establish probable cause and there was no independent basis established for his arrest.

*Duarte*, 389 S.W.3d 349, 353, 360-61 (Tex. Crim. App. 2012). The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a "substantial basis" for issuing the warrant. *Duarte*, 389 S.W.3d at 354 (citation omitted); *Valadez v. State*, 476 S.W.3d 661, 670 (Tex. App.—San Antonio 2015, pet. ref'd). We will uphold the magistrate's probable cause determination so long as the magistrate had a substantial basis for concluding that probable cause existed. *Valadez*, 476 S.W.3d at 670. We analyze the affidavit with common sense, recognizing that the magistrate may draw reasonable inferences from the facts and circumstances contained within the four corners of the affidavit. *See id.*

Information in an affidavit supporting an arrest may be based on either the affiant's personal knowledge or on hearsay information. *Id.* The reliability of the affiant and his sources are part of the "totality of the circumstances" that the magistrate should evaluate in determining probable cause. *State v. Coker*, 406 S.W.3d 392, 395–96 (Tex. App.—Dallas 2013, pet. ref'd) (citations omitted). However, where an eyewitness to the offense is the direct source of the information conveyed to the magistrate via a police officer, corroborative facts and other indicia of reliability are unnecessary. *White v. State*, 746 S.W.2d 775, 778 (Tex. App.—Dallas 1985, no pet.). The affidavit is sufficient if the information given by an unnamed eyewitness adequately suggests direct knowledge on his or her part. *See*

8

*Belton v. State*, 900 S.W.2d 886, 894 (Tex. App.—El Paso 1995, pet. ref'd); *see also Valadez*, 476 S.W.3d at 670.

Hubert argues that Chowns's affidavit was conclusory and insufficient because it failed to name the informants or establish their credibility and the reliability of their information. In his affidavit, Chowns averred that the complainant called the police to report that Hubert was walking around with a firearm that he pointed in the complainant's direction and that Hubert had commented that he was going to kill someone. Chowns further averred that there were four witnesses to the incident who observed Hubert with an assault style rifle and pistol. In viewing the totality of the circumstances in a common sense and realistic manner, we conclude the magistrate had a substantial basis for concluding probable cause existed to issue the arrest warrant against Hubert. *See Duarte*, 389 S.W.3d at 354. We further conclude that Chowns's affidavit is sufficient and did not require corroborative facts and other indicia of reliability because the unnamed complainant and other witnesses who provided the information were eyewitnesses who had direct knowledge of the incident. *See Valadez*, 476 S.W.3d at 670; *Belton*, 900 S.W.2d at 894; *White*, 746 S.W.2d at 778. Accordingly, Hubert's complaint that the trial court erred by admitting the firearms seized upon his arrest because Chowns's affidavit was insufficient to establish probable cause is without merit. We overrule issue one.

9

SUFFICIENCY OF THE EVIDENCE

In issue three, Hubert argues that the evidence is insufficient to support his conviction for unlawful possession of a firearm by a felon because the evidence did not establish that he possessed the Springfield Armory XD 40-caliber handgun. In issue four, Hubert argues that the evidence is insufficient to support his conviction for evading arrest or detention with a previous conviction because the State failed to establish that Ibarra had a lawful basis to arrest or detain him.

In evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the ultimate authority on the credibility of the witnesses and the weight to be given to their testimony. *Penegraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). An appellate court may not sit as a thirteenth juror and substitute its judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. A reviewing court must give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from

10

basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13 (citation omitted). If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *See Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all evidence when viewed in the light most favorable to the verdict." *Hooper*, 214 S.W.3d at 16-17. We treat direct and circumstantial evidence equally. *Clayton*, 235 S.W.3d at 778.

To establish unlawful possession of a firearm by a felon, the State must prove that a person who has been convicted of a felony possessed a firearm after (1) conviction and before the fifth anniversary of his release from confinement or supervision following conviction of the felony, whichever is later; or (2) the period described by Subdivision (1), at any location other than the premises at which the person lives. Tex. Penal Code Ann. § 46.04(a). A separate statute defines "[p]ossession." *See id.* § 1.07(a)(39). The State can prove the defendant knowingly or intentionally possessed a firearm by introducing either direct or circumstantial evidence to establish the defendant (1) exercised care, custody, or control of the firearm, (2) was conscious of his connection with the firearm, and (3) possessed the firearm knowingly or intentionally. *See id.*; *Greer v. State*, 436 S.W.3d 1, 5 (Tex. App.—Waco 2014, no pet.). While the State can meet its burden with direct or

11

circumstantial evidence, the evidence before the jury must establish the defendant's connection to the firearm was more than fortuitous. *See Greer*, 436 S.W.3d at 5 (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)).

When the evidence before the jury does not establish the defendant had the firearm on his person or that he had exclusive possession of the gun, the evidence in trial must affirmatively link the defendant to the gun. *See Barlow v. State*, 586 S.W.3d 17, 23 (Tex. App.—Beaumont 2019, pet. ref'd); *Jones v. State*, 338 S.W.3d 725, 742 (Tex. App.—Houston [1st Dist.] 2011 (op. on reh'g), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012). The affirmative links must show either that the defendant voluntarily possessed the gun or that he "'was conscious of his connection with the weapon and knew what it was.'" *Stout v. State*, 426 S.W.3d 214, 218 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (quoting *Jones*, 338 S.W.3d at 742). The "affirmative links" requirement is designed to protect an innocent bystander from being convicted based solely upon the fact the evidence was established the defendant was seen near another person's gun. *Blackman v. State*, 350 S.W.3d 588, 594 (Tex. Crim. App. 2011) (quoting *Poindexter v. State*, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005)).

To determine whether the evidence admitted in the trial sufficiently established affirmative links between the defendant and the firearm, courts look to the following non-exclusive factors: (1) was the firearm in plain view; (2) was the

firearm found near the defendant in a location where the defendant could have easily accessed the weapon; (3) was the firearm found on the defendant; (4) did the defendant attempt to flee; (5) did the defendant's conduct indicate his consciousness of guilt, including the extreme nervousness or furtive gestures; (6) did the defendant have any special relationship or connection to the firearm; (7) was the place where the firearm was found enclosed; and (8) did the defendant's affirmative statements connect him to the firearm, including incriminating statements made by the defendant when arrested. *Stout*, 426 S.W.3d at 218 (citing *James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)). While courts use the above non-exclusive factors to examine whether the evidence affirmatively links the defendant to the firearm, "[t]he absence of various links" is not dispositive but may be weighed with other links that are present. *Swapsy v. State*, 562 S.W.3d 161, 165 (Tex. App.—Texarkana 2018, no pet.) (quoting *Williams v. State*, 313 S.W.3d 393, 398 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)).

The evidence before the jury included several affirmative links connecting Hubert to possession of the Springfield Armory XD 40-caliber handgun. Richmond testified that he observed Hubert carrying a white pillowcase that contained a firearm and that a Springfield XD 40-caliber handgun was recovered from the scene. The video from Richmond's body camera shows that Hubert was arrested near the Springfield XD 40-caliber handgun, which was found in plain view in the grass a

13

few feet from the white pillowcase. The video also shows another Trooper stating that Hubert had the Springfield XD 40-caliber handgun in his hand when he was running. Ibarra testified that he observed Hubert with a white pillowcase in his arm and that he collected the Springfield Armory XD 40-caliber handgun at the scene of Hubert's arrest.

We conclude that Hubert's connection to the Springfield Armory XD 40-caliber handgun was more than fortuitous and that the logical force of the links established by the evidence submitted at trial would allow a reasonable jury to conclude that Hubert possessed the Springfield Armory XD 40-caliber handgun. *See Greer*, 436 S.W.3d at 5; *Graves v. State*, No. 01-19-00868-CR, No. 01-19-00869-CR, 2020 WL 7349101, at *3 (Tex. App.—Houston [1st Dist.] Dec. 15, 2020, pet. ref'd) (mem. op., not designated for publication). Reviewing all the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found the elements of unlawful possession of a firearm by a felon beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011); *Graves*, 2020 WL 7349101, at *3; *see also* Tex. Penal Code Ann. § 46.04(a). We overrule issue three.

Under section 38.04 of the Texas Penal Code, a person commits the offense of evading arrest or detention if he intentionally flees from a person he knows is a peace officer attempting to lawfully arrest or detain him. Tex. Penal Code Ann. §

14

38.04(a). The indictment alleges that Hubert fled from Sergeant Ibarra, who was a peace officer who was lawfully attempting to arrest or detain him, and that prior to the commission of the charged offense, Hubert was convicted of evading arrest under section 38.04. Hubert argues the evidence is insufficient to support his conviction for evading arrest or detention with a previous conviction because the State failed to establish that Ibarra had a lawful basis to arrest or detain him.

Having already determined that Chowns's affidavit was sufficient to establish probable cause to issue the arrest warrant against Hubert, we conclude that Ibarra had a lawful basis to arrest or detain Hubert. Additionally, Ibarra testified that his dash camera on his marked patrol vehicle captured his attempt to apprehend Hubert because there was a warrant for his arrest. Ibarra explained that he was in full uniform and had activated his lights and sirens when Hubert ran. Ibarra's dash cam video shows Hubert running down the road and into a wooded area carrying a white bag and Ibarra driving into a grassy area in pursuit of Hubert. Reviewing all the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found the elements of the state jail felony offense of evading arrest or detention with a previous conviction beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Gear*, 340 S.W.3d at 746; Tex. Penal Code Ann. § 38.04(a). Accordingly, we overrule issue four.

JURY CHALLENGES FOR CAUSE

In issue two, Hubert complains the trial court erred by granting two of the State's challenges for cause and dismissing the venirepersons because they could not consider the full range of punishment. According to Hubert, both venirepersons confirmed that they could consider the full range of punishment after being questioned further.

We review a complaint about the trial court's granting of the State's challenges for cause for an abuse of discretion. *See Tracy v. State*, 597 S.W.3d 502, 512 (Tex. Crim. App. 2020). Since the trial court is in the best position to evaluate a potential juror's demeanor and responses, we give consideration deference to the trial court's ruling on a challenge for cause. *Hudson v. State*, 620 S.W.3d 726, 731 (Tex. Crim. App. 2021). "A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." Tex. Code Crim. Proc. Ann. art. 35.16(a). "[T]he proponent of a challenge for cause has the burden of establishing that the challenge is proper." *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). The State may make a challenge for cause that the juror has a "bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." Tex. Code Crim. Proc. Ann. art. 35.16(b)(3); *see Pierce v. State*, 696 S.W.2d 899, 901-03 (Tex. Crim. App. 1985). "Both the State and the defense are entitled to jurors who can consider the

16

entire range of punishment for the particular statutory offense–*i.e.*, from the maximum to the minimum and all points in between." *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010). "[U]nless there is further clarification or vacillation by the juror, the trial judge must grant a challenge for cause if the juror states that he cannot consider the full range of punishment." *Id.* at 185.

During voir dire, the prosecutor asked the panel if anyone was unable to consider the full range of punishment of 25 to 99 or life for the crime of unlawful possession of a firearm by a felon if the State shows that the defendant has two or more prior convictions. The record reflects that among others, venirepersons 18 and 28 indicated they could not consider the full range of punishment of 25 to 99 or life. The State challenged venirepersons 18 and 28 for cause, and the trial court granted the State's challenges. Although Hubert argues that venirepersons 18 and 28 confirmed that they could consider the full range of punishment after being questioned further, the record does not support Hubert's argument. Rather, the record shows that venireperson 18 told the trial court that he could not follow the full range of punishment if the individual only had minor felonies but still fell under the habitual status. The record further shows that venireperson 28 also told the trial court that she could not consider the full range of punishment if the individual had minor felonies because it was "too harsh a punishment." We conclude the trial court did not abuse its discretion by granting the State's challenges for cause. *See* Tex.

17

Code Crim. Proc. Ann. art. 35.16(a), (b)(3); *Tracy*, 597 S.W.3d at 512; *Cardenas*, 325 S.W.3d at 184-85; *Gardner*, 306 S.W.3d at 295. We overrule issue two. Having overruled each of Hubert's issues, we affirm the trial court's judgments.

AFFIRMED.

_____
W. SCOTT GOLEMON
Chief Justice

Submitted on April 8, 2022
Opinion Delivered April 27, 2022
Do Not Publish

Before Golemon, C.J., Kreger and Johnson, JJ.